IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

PAUL MALONE, SR. and FAITH
LANIER MALONE,
    Plaintiffs,

v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION,
&
BANK OF AMERICA, N.A.
    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE
NO. 1:14-CV-193 (WLS)

## AMENDED COMPLAINT

COME NOW  Plaintiffs named above and for their Amended Complaint state the following:

### 1.

Plaintiffs are residents of Dougherty County, Georgia and have been for more than six months preceding the filing of this complaint.

### 2.

Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION, (hereafter referred to as FHLM) is a nationally chartered banking corporation created by Congress for the purpose of buying residential mortgages and providing liquidity in the real estate market.  In the course of its operations it conducts business in Georgia and in every other state.  Defendant does business in Dougherty County Georgia and has alleged in response to Plaintiff's initial complaint that it is a nonresident of the State of Georgia and such non-residence constitutes the basis for diversity jurisdiction in this Honorable Court.

3.

Defendant FHLM, has been served and has removed this action to the U.S.

District Court and has also filed its Motion to Dismiss.  Removal has been granted.  The

Court has not yet ruled on the Motion to Dismiss.  FHLM  has not yet filed it's Answer

and Responsive Pleading.

4.

Defendant BANK OF AMERICA, N.A. is a North Carolina corporation, having its

principal office at 150 N. College St., NC1-028-17-06, Charlotte, NC 28255-0001.

(Hereafter referred to as "BAC") The corporation is registered to do business in the

State of Georgia, and may be served at the office of its registered agent being: CT

CORPORATION SYSTEM, whose office address is 1201PEACHTREE STREET NE,

ATLANTA GEORGIA 30361.

5.

Plaintiff, Faith Malone, purchased her home situated at 2700 Wilton Court,

Albany, GA on or about July 10, 1981 recorded in Deed Book 678, Page 735.  A copy

of her warranty deed is attached hereto as Exhibit "A".

6.

Plaintiff, Faith Malone conveyed a one-half interest in the her home to her

husband, Plaintiff Paul E. Malone, Sr., by warranty deed dated August 26, 2007,

recorded in Deed Book 3389, Page 307, Dougherty County records, a copy of which is

attached hereto as Exhibit "B".

7.

Prior to August 14, 2007 Plaintiffs negotiated with NATIONWIDE LENDING CORPORATION to refinance their home mortgage.  The lender generated all of the documents for use in the refinance transaction and provided disclosures to Plaintiffs.

8.

On Sunday, August 26, 2007 attorney Ramon Fajardo came to the Plaintiffs' home and oversaw the Plaintiffs signing the closing documents which included a promissory note and the Security Deed which was preprinted with the date of August 14, 2007 setting forth Mortgage Electronic Systems, Inc., MERS solely as nominee for NATIONWIDE LENDING CORPORATION.  There was no other witness or notary public present or in attendance to acknowledge the signatures of Plaintiffs.  When asked about that deficiency Mr. Fajardo assured the Plaintiffs that he had people in his office who would sign where needed.

9.

The attesting  signatures of Ms. Ramine Higgs, unofficial witness and Ms. Alicia Gassett,  notary  were added between Aug. 26, 2007 and Sept. 10, 2007,  the date it was filed for record in Deed Book 3389, Page 310 Dougherty County Records.  A copy of that Security Deed is attached hereto as Exhibit "C".

10.

The Security Deed from Plaintiffs to MERS as nominee for Nationwide Lending Corporation was assigned from MERS to BAC Home Loans Servicing, L..P. fka Countrywide Home Loans Servicing, L.P., dated March 15, 2012 and recorded in Deed Book 3891, Page 244, Dougherty County Records, a copy of which is attached as Exhibit "D".

11.

BAC Home Loans Servicing, L.P. is a wholly owned subsidiary of Defendant Bank of America, N.A. and at all times concerned herein operated as such and was the servicer of the instant loan after acquiring Countrywide Home Loans Servicing, LP.

12.

The Security Deed was cried out and foreclosed on the 3rd day of September 2013 and a Deed Under Power, reciting the foreclosure was executed on the 8th day of October 2013, by Defendant's attorney in fact, McCalla Raymer, LLC, pursuant to an appointment for same recorded in Deed Book 4011, Page 294 Dougherty County Records. The Deed Under Power conveyed title to Bank of America, N.A. and was recorded in Deed Book 4072, Page 31, Dougherty County Records, a copy of which is attached hereto as Exhibit "E".

13.

A Special Warranty Deed was executed by Bank of America, N.A., on October 8, 2013 reciting an effective date of September 3, 2013, and signed by the same two agents of McCalla Raymer, LLC, as attorney in fact for Bank of America, N.A., conveying title to the subject property to Federal Home Loan Mortgage Corporation, Defendant herein. The Special Warranty Deed was recorded in Deed Book 4072, page 34, Dougherty County Records. A copy of which is attached hereto as Exhibit "F".

14.

The foreclosure is defective due to the fact that there was no default in payments on the part of Plaintiffs and defendant BOA failed or refused to provide any information validating the debt after repeated requests to do so.

15.

In February 2008, Plaintiff's received a solicitation from Countrywide Home

Loans Servicing, L.P., offering to sell Plaintiffs a policy of credit life insurance from

Balboa Insurance, which was ostensibly a related company to Countrywide.

16.

Plaintiffs agreed to examine the proposal, received a package which appeared to

be the policy, reviewed the same and determined they did not wish to purchase the

policy and after doing so canceled the policy according to the company's instructions by

sending a certified mail notice of cancellation.

17.

Plaintiffs had since the inception of their loan made all payments to Countrywide

online.

18.

In April 2008 Countrywide Home Loans Servicing began adding the premium for

the declined policy of credit life insurance to the mortgage statement.  Having declined

the policy Plaintiffs continued to make their mortgage payment for the correct amount

which did not include the credit life insurance premium until May 2009.

19.

When Plaintiff attempted to make the May 2009 payment to Countrywide

online she was redirected to the BAC website and was informed that she owed

payments for January through June 2009 plus late fees and penalties.

20.

Plaintiff was not  informed until May 2009 that BAC Home Loans Servicing, L.P.,

had acquired Countrywide in January 2009 and had taken over servicing Plaintiff's

mortgage as of that date and had not credited her payments for the last five months.

21.

The issue of the lost payments was referred to the Investigative Division of BAC

Home Loans and to the office of the Consumer Advocate and was never resolved due

to the constant turnover of advocates and the obfuscation or loss of records.

22.

Plaintiffs have tried to make payments on the original mortgage amount and

have paid approximately  $8,000.00 via Quick Collect which has been held in a

suspense account and not applied to the mortgage balance.

23.

Even though Plaintiffs have made repeated requests and pleas for an accounting

in order to ascertain exactly what the balance and payment record may be with BAC

they have not been provided any such accounting.

24.

At some point BAC without any authorization or necessity removed Plaintiff Faith

Lanier Malone from BAC's records as a borrower on the Malones' loan and thereafter

required signed releases by Mr. Malone to allow Mrs. Malone to discuss with BAC the

loan on which she was a maker and joint obligor.  Attached hereto as Exhibit "G"

is a letter from Countrywide dated September 6, 2008 advising only Plaintiff Paul

Malone of the theft personal information.

25.

In January 2011 after disputing the loss of Plaintiffs' payments and the

unauthorized assessment for credit life insurance premiums, Defendant's counsel, McCalla Raymer sent its initial letter demanding payment and advising Plaintiffs of the right to dispute the validity of the Debt.  A copy of the letter addressed to both Plaintiffs is attached hereto as Exhibit "H".


26.

Attached hereto as Exhibit "I" is a letter from BAC's customer advocate Darian Street-Hoover dated February 23, 2011 acknowledging receipt of Plaintiff's letter dated February 17, 2011 regarding the debt which was treated as a 'Qualified Written Request" under RESPA § 6(e).

27.

Attached hereto as Exhibit "J" is a copy of a fax cover sheet from Plaintiffs to Ms. Street-Hoover for correspondence consisting of 16 pages.

28.

On February 28, 2011, in spite of disputing the validity of the debt and opening a claim with the BAC customer advocate, BAC's counsel sent its Notice of Foreclosure Sale, which notice showed that the original borrower had been both Paul E. Malone, Sr., and Faith Lanier Malone, and that the current borrower was now just Paul E. Malone, Sr.  A copy of that letter is attached hereto as Exhibit "K".  No action was ever taken by Plaintiffs to remove Faith Malone from the obligation nor was there ever any consent to that action.

29.

On March 3, 2011, Plaintiffs once again faxed correspondence to BAC's

Customer Advocate, Ms. Street-Hoover from the local branch of BAC of 3 pages
consisting of a signed release authorizing communication with Mrs. Faith Lanier
Malone. A copy of the fax cover sheet is attached hereto as Exhibit "L".

30.

Contemporaneously, Plaintiffs opened Case Number 01462944 with the
Customer Assistance Group of the Comptroller of the Currency, Administration of
National Banks which responded on September 19, 2011 that its response would be
delayed due to the bank's response that it needed additional information.   The
additional information was another signed release from Paul Malone in order to disclose
information to Faith Malone. Attached as Exhibit "M-1 and M-2" are the responses from
the  Comptroller's office and BAC stating it did not have the signed authorization which
had been faxed from a BAC branch on March 3, 2011.

31.

On November 18, 2011 the Office of the Comptroller of the Currency replied to
Plaintiffs that the response from BAC appropriately addressed the Plaintiffs' concerns
when in fact there had been no resolution to the issue other than the submission of
multiple signed releases by Paul Malone authorizing the bank to speak with Faith
Malone.  A copy of that letter is attached hereto as Exhibit "N".

32

Plaintiffs submitted their February 10, 2012 payment by check number 1184 of
that date in the amount of $1,291.36, which was rejected by the branch on February 14,
2012 with the explanation that it would have to be in certified funds and sent directly to
the Mortgage Department and provided a contact telephone number.  A copy of that

note, check and envelope is attached hereto as Exhibit "O".

33.

On March 5, 2012 Plaintiffs sent another letter to Jimilia Middleton, the second BOA Customer Advocate outlining the three prior authorizations which had been provided to the bank allowing communication with Plaintiff Faith L. Malone.   A copy of the letter which was faxed that date is attached hereto as Exhibit "P".

34.

On March 28, 2012, BOA's counsel,  McCalla Raymer,  sent another Notice of Foreclosure Sale bearing that date to Paul E. Malone, Sr., which notice showed the change from both borrowers to only Paul Malone and also referenced its second "Initial Communication Letter" dated February 17, 2012 which precipitated the above referenced March 5, 2012 letter with a fourth release and authorization.  A copy of that letter is attached as Exhibit "Q".

35.

On April 18, 2012 a third Customer Advocate, Ms. Tiffany Hensley, wrote to Plaintiff, Paul Malone, advising him that his letter received on April 12, 2012 would once again be treated as a "Qualified Written Request under RESPA § 6(e)" because he once again **requested details regarding the servicing of your account**.  A copy of that letter is attached hereto as Exhibit "R".  To date no details of the servicing of Plaintiffs' account have been received.

36.

On April 22, 2012 a release of information was provided by Plaintiff Faith Malone to the office of U. S. Senator Saxby Chambliss, from whom the Plaintiffs sought

assistance in obtaining relief from both the Office of the Comptroller of the Currency and the Consumer Finance Protection Bureau complaints.  A copy of same is attached hereto as Exhibit "S".

37.

In spite of years of requests for a verification of the amount allegedly due and the allocation of payments made and payments received and held in suspense accounts no such response has ever been received nor have payments been accepted.

38.

Over the course of years since March 2012 BOA has sent home inspectors and property managers to the Plaintiff's home in order to assess the value and condition of their collateral which visits have had the effect of intimidating and humiliating Plaintiffs as they have been steadfastly trying to get some clarity on their situation and to have their payments accepted.

39.

From March 2012 until the foreclosure sale in September 2013 Plaintiffs were unsuccessful in their constant communications with BAC to have anyone advise them of the status and whereabouts of the payments which BAC had misplaced.

40.

From March 2012 until the foreclosure sale in September 2013 BAC would not accept Plaintiff's monthly payments while they were investigating the "lost" payments.

41.

Not until Defendant foreclosed on the property and sought to evict Plaintiffs in the Magistrate Court of Dougherty County,Georgia, Case No. 2013-4891CD, which was

appealed to the Superior Court of Dougherty County, Georgia as Case No. 13 CV 2467, have the Plaintiffs been able to have their payments accepted, even though they have been paid into the registry of the Court and that case is now stayed by the instant case which has been removed to this Court.

42.

Since the foreclosure in September 2013 by BAC and the conveyance by Special Warranty Deed to FHLM on September 3, 2013, BAC has continued to maintain an open Mortgage Loan Account on Plaintiffs.   Attached hereto as Exhibits "T-1, T-2, T-3 and T-4" are copies of Online Banking Alerts dated 9/10/2013, 11/27/2013, 11/6/14 and 4/23/15 respectively, indicating payments by BOA of insurance and tax payments by BOA for the property even after the foreclosure sale and transfer to FHLM.

43.

It is necessary to finally determine the status of payments made by Plaintiffs to Countrywide and  Defendant BAC in order to determine whether Plaintiffs were ever in default before BOA ceased accepting payments and manufactured a default.  No accounting has been provided in spite of years of repeated requests and involvement of multiple customer advocates and regulatory agencies.  Defendant BOA is required to maintain a detailed record of all payments made by Plaintiffs and how those payments were applied.

44.

Plaintiffs entered into a contract with  Defendant's  predecessor, Nationwide Lending which obligated the assignee lender and servicers Countrywide and BOA to

operate in good faith and accurately account for payments made by Plaintiffs.

45.

Defendant BOA has breached its duty of good faith in one or more of the

following ways:

    (a)   by either mistakenly adding premiums and then failing to correct their error

    or by intentionally and maliciously adding credit life insurance  premiums to the

    Plaintiffs' monthly mortgage payments; or,

    (b)    by failing to timely notify Plaintiffs of the transfer of servicing of their loan;

    or,

    (c)   by failing to account for payments that were made to the Countrywide after it

    had been acquired by BOA; or,

    (d)   by failing to account for all payments made by Plaintiffs prior to March 2012;

    and,

    (e)    by proceeding to foreclose on a deed to secure debt after having been

    advised repeatedly of  disputes on the debt and failing to address the disputed

    accounting issues.

46.

Defendant BOA is currently maintaining an escrow account and funding

unnecessary advances for taxes and insurance on the subject property even though

title has been deeded to FHLM.

47.

Defendants BOA and FHLM  are so closely aligned  that FHLM is not a good

faith third party purchaser for value pursuant to an arms length transaction who should be entitled to retain title to the subject property over the claims of Plaintiffs.

WHEREFORE, PLAINTIFFS PRAY:

1.     That summons and process issue and be served upon Defendant Bank of America, N.A.;

2.     That Defendants be temporarily and permanently enjoined from dispossessing or evicting Plaintiffs from their home located at 2700 Wilton Court, Albany, Ga 31721;

3.     That Plaintiffs be provided a full and complete accounting of all funds paid by them to Defendant BOA and its predecessor Countrywide Loan Servicing;

4.     That both the foreclosure sale of Plaintiffs' home and the subsequent deed from BOA to FHLM be set aside and title restored to Plaintiffs free and clear of the lien which was foreclosed;

5.     That Plaintiffs be allowed to enter into a mortgage with Defendant BOA for the correct amount owed by them after properly crediting all payments made and deducting all late fees, penalties, assessments for insurance, taxes, attorney's fees, foreclosure expenses, and any other charges that may have been improperly assessed against Plaintiffs;

6.     That Plaintiffs be awarded their reasonable and necessary litigation expenses including attorney's fees in bringing this action;

7.     That in the event the Court concludes that Defendants have acted willfully

or maliciously or with conscious indifference to the consequences of their actions that the Plaintiffs be awarded an amount for punitive damages that will be sufficient to deter the Defendants from such conduct in the future and will repay the hurt feelings of the Plaintiffs;

8.   That the funds held on deposit in the registry of the Superior Court of Dougherty County, Georgia, in connection with the underlying Superior Court action be disbursed to Plaintiffs for such use as they may see fit; and,

9.   For such other and further relief as the Court may deem appropriate.

Respectfully submitted, this 21st day of May, 2015.

/s/   L. Clayton Smith, Jr.,

L. Clayton Smith, Jr.,P.C.
Ga. Bar No. 661310
P.O. Box 70875
Albany, GA 31708
Tel. 229-434-1070
Fax. 229-434-0322
E-mail: lcslaw@bellsouth.net
Attorney for Plaintiffs

SIVIKE, WILKIN, DERISO & RAULERSON
ATTORNEYS AT LAW
ALBANY, GEORGIA

## WARRANTY DEED

678 PAGE 735

DOUGHERTY COUNTY, GEORGIA

THIS INDENTURE, made this 10th day of JULY in the year of our Lord, One Thousand Nine Hundred and EIGHTY ONE between

PROFESSIONAL INVESTORS, INC., a Georgia Corporation of the County of DOUGHERTY and State of GEORGIA of the first part, herein called "grantor" (whether one or more than one), and

FAITH LANIER MALONE
of the County of DOUGHERTY and State of GEORGIA of the second part, herein called "grantee" (whether one or more than one);

WITNESSETH: That the grantor for and in consideration of the sum of

TEN AND NO/100 DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATIONS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed and by these presents does grant, bargain, sell and convey unto the grantee and the heirs, executors, administrators, successors and assigns of grantee, all that tract or parcel of land lying and being in the County of Dougherty, State of Georgia, and being more particularly described as follows:

All of Lot 65 in Doublegate Subdivision, Section III, according to a map or plat of said subdivision recorded in Plat Book 5, page 71, in the office of the Clerk of Superior Court of Dougherty County, Georgia.

This deed is made subject to restrictions and easments of record.

Grantee will pay 1981 ad valorem taxes, grantor having paid its pro rata portion at closing.

DOUGHERTY COUNTY, GEORGIA
Real Estate Transfer Tax
PAID # 11.20
DATE July 13, 1971
Clerk of Superior Court

To have and to hold the said bargained premises, together with all and singular, the rights, members and appurtenances thereof, to the same being, belonging or in anywise appertaining to the only proper use, benefit and behoof of grantee and the heirs, executors, administrators, successors and assigns of grantee, in fee simple.

And grantor and the heirs, executors, administrators, successors and assigns of grantor, warrant the title to the said bargained premises against the claim of all and every other person or persons whatsoever, and shall and will warrant and forever defend the title to said bargained premises by virtue of these presents.

IN TESTIMONY WHEREOF, grantor has caused this deed to be properly signed and sealed the day and year first above written.

Signed, sealed and delivered in the presence of:

PROFESSIONAL INVESTORS, INC.

By: _____ (SEAL)
President

_____
Attest: Willie F. Dunn Jr. _____ (SEAL)
Secretary _____ (SEAL)

Notary Public   Com. Exp. 2-17-85

RECORDED
DATE: JUL 14 1981

Royce B. Aimon
CLERK

PLAINTIFF'S
EXHIBIT
A

**BOOK 3389 PAGE 307**

```
DOC# 009343
FILED IN OFFICE
09/10/2007  10:00 AM
BK:3389  PG:307-309
EVONNE S. MULL
CLERK OF
COURT
DOUGHERTY COUNTY
REAL ESTATE TRANSFER T
AX
PAID: $0.00
```

Mail Tax Stmt:
Paul E. Malone
270 Wilton Ct.
Albany, GA 31721

RETURN TO:
Landers First Choice
1765 Voyager Street
Suite 100
Simi Valley, CA 93063
36-7458927

~~RECORDATION REQUESTED BY/RETURN TO:~~

NATIONWIDE LENDING

165 TECHNOLOGY DRIVE
IRVINE, CA 92618

0610100342                              FOR RECORDER'S USE ONLY

## WARRANTY DEED
FAITH LANIER MALONE

For good consideration, I (we)

hereby bargain, deed and convey to    PAUL E. MALONE, SR. AND FAITH LANIER MALONE,
HUSBAND AND WIFE, AS JOINT TENANTS

the following described land in    DOUGHERTY          county, free and clear with WARRANTY
COVENANTS; to wit:    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF
APN#005-2/00000/065

GA "GAWD1"                         Page 1 of 2



Grantor, for itself and its heirs, hereby covenants with Grantee, its heirs, and assigns, that Grantor is lawfully seized in fee simple of the above-described premises; that it has a good right to convey; that the premises are free from all encumbrances; that Grantor and its heirs, and all persons acquiring any interest in the property granted, through or for Grantor, will, on demand of Grantee, or its heirs or assigns, and at the expense of Grantee, its heirs or assigns, execute and instrument necessary for the further assurance of the title to the premises that may be reasonably required; and that Grantor and its heirs will forever warrant and defend all of the property so granted to Grantee, its heirs, against every person lawfully claiming the same or any part thereof.

WITNESS the hands and seal of said Grantors this 26 day of AUGUST, 2007.
Signed, sealed and delivered in the presence of:

_Faith Lanier Malone_
Grantor    FAITH LANIER MALONE

_Sara Jones_    WITNESS
Grantor    Sara Jones

_Laura Adler_
Grantor    Laura Adler    WITNESS

_____
Grantor

_____
Grantor

_____
Grantor


STATE OF GEORGIA
COUNTY OF DOUGHERTY            } SS.

I, _ALICIA GASSETT_ _____ hereby certify that ___ FAITH LANIER MALONE

_____

_____

_____

whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this
day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same
bears date. Given under my hand this 26 day of August

_Alicia Gassett_
Notary Public

Notary Public, Dougherty County, Georgia
My Commission Expires December 13, 2010

PREPARED BY: AMY BERES, Attorney at Law
              1000 ARBOR WAY
              MCDONOUGH, GA 30253

GA "GAWD2"                      Page 2 of 2

BOOK 3389 PAGE 309

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE COUNTY OF
DOUGHERTY, STATE OF GEORGIA, AND BEING MORE PARTICULARLY
DESCRIBED AS FOLLOWS:

ALL OF LOT 65 IN DOUBLEGATE SUBDIVISION, SECTION III, ACCORDING
TO A MAP OR PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK 5,
PAGE 71, IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF
DOUGHERTY COUNTY, GEORGIA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 005-2/00000/065; SOURCE OF TITLE IS BOOK 678, PAGE
735 (RECORDED 07/13/81)

DOC# 009344
FILED IN OFFICE
09/10/2007  10:00 AM
BK:3389  PG:310-326
EVONNE S. MULL
CLERK OF
COURT
DOUGHERTY COUNTY

After Recording Return To: PREPARED BY:
NATIONWIDE LENDING CORPORATION
165 TECHNOLOGY DRIVE
IRVINE, CALIFORNIA 92618
Loan Number: 0610100342

RETURN TO:
Lenders First Choice
1785 Voyager Street
Suite 100
Simi Valley, CA 93063
36-7458927

GEORGIA INTANGIBLE
TAX PAID
$390.00
DATE 9/10/2007
CLERK OF
COURT
DOUGHERTY COUNTY

————————————— [Space Above This Line For Recording Data] —————————————

## SECURITY DEED

MIN: 1000566-0610100342-9

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  AUGUST 14, 2007  , together with all Riders to this document.
(B)  "Borrower" is  PAUL E. MALONE SR. AND FAITH LANIER MALONE, HUSBAND AND WIFE, AS JOINT TENANTS

Borrower is the grantor under this Security Instrument.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the grantee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D)  "Lender" is  NATIONWIDE LENDING CORPORATION

Lender is a  DELAWARE CORPORATION                                            organized
and existing under the laws of  DELAWARE
Lender's address is  165 TECHNOLOGY DRIVE, IRVINE, CALIFORNIA 92618

(E)  "Note" means the promissory note signed by Borrower and dated  AUGUST 14, 2007  .
The Note states that Borrower owes Lender  ONE HUNDRED THIRTY THOUSAND AND 00/100
Dollars (U.S. $ 130,000.00    ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
SEPTEMBER 1, 2037  .

Borrower Initials: PM  FEM

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS            DocMagic EForms 800-649-1362
Form 3011 01/01                          Page 1 of 13                              www.docmagic.com

Gs3011.1.emd



PLAINTIFF'S EXHIBIT C

[INDEX DATA]

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

GO BACK(F9)

Current User: PUBLIC, Logout   HOME

2 of 17

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Second Home Rider
☐ Condominium Rider          ☒ Other(s) [specify]
                               ACKNOWLEDGMENT WAIVER RIDER

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "**Escrow Items**" means those items that are described in Section 3.
(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY              of              DOUGHERTY
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

Borrower Initials: _____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic ☐ 800-649-1362
Form 3011 01/01                     Page 2 of 13                                  www.docmagic.com

Gt3011.mzd

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE COUNTY OF DOUGHERTY, STATE OF GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: ALL OF LOT 65 IN DOUBLEGATE SUBDIVISION, SECTION III, ACCORDING TO A MAP OR PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK 5, PAGE 71, IN THE OFFICE OF THE CLERK OF SURPER COURT OF DOUGHERTY COUNTY, GEORGIA. FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY ASSESSOR AS 005-2/00000/065; SOURCE OF TITLE IS BOOK 678, PAGE 735 (RECORDED 07/13/81)
A.P.N.: 005-2/00000/065

which currently has the address of       2700 WILTON COURT
                                                              [Street]

ALBANY                          , Georgia      31721      ("Property Address"):
[City]                                         [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be

Borrower Initials: _____  _____  _____  _____  _____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01                          Page 3 of 13

DocMagic eFarms 800-649-1362
www.docmagic.com

Gc3011.zmd



DOUGHERTY COUNTY PROPERTY RECORD SEARCH

Current User: PUBLIC, Logout   HOME

GO BACK (F8)

4 of 17

applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree

Borrower Initials: _____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01                                  Page 4 of 13

DocMagic *eFerms* 800-649-1362
www.docmagic.com

Gt3011.mzd

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

Current User: PUBLIC, Logout   HOME

GO BACK(F5)

in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any

Borrower Initials: _____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01                                      Page 5 of 13

DocMagic *eForms* 800-649-1362
www.docmagic.com

Gs3011.mxd

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

Current User: PUBLIC, Logout   HOME

form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application.   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Borrower Initials: SAM   SEM

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01
Page 6 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

Gx3011.mxd



DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

Current User: PUBLIC, Logout   HOME

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Borrower Initials: _____ _____ _____ _____ _____

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01                                    Page 7 of 13

DocMagic EForms 800-649-1362
www.docmagic.com

Gs3011.mzd



[INDEX DATA]

Current User: PUBLIC, Logout   HOME

**DOUGHERTY COUNTY PROPERTY RECORD SEARCH**

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

Borrower Initials: _____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01
Page 8 of 13

DocMagic   800-649-1362
www.docmagic.com

Gs3011.mxd



DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

GO BACK (F5)

Current User: PUBLIC, Logon | HOME

9 of 17

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

Borrower Initials: _JHM_ _DEM_

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01
Page 9 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

Gs3011.md

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

GO BACK(F5)

Current User: PUBLIC, Logout   HOME

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

Borrower Initials

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01                                    Page 10 of 13

DocMagic EForms 800-649-1362
www.docmagic.com

Gc3011.mzd

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate

Borrower Initials: _____ _____ _____ _____ _____

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01
Page 11 of 13

DocMagic eForms 800-649-1362
www.docmagic.com

Gs3011.mzd



DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

GO BACK(F5)

Current User: PUBLIC, Logout    HOME

payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

Borrower Initials: _JAM_ _JEM_ _____ _____ _____ _____



GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01
Page 12 of 13

DocMagic    800-649-1362
www.docmagic.com

Gs3011.mzd

[INDEX DATA]

Current User: PUBLIC, Logout  ⊙HOME

**DOUGHERTY COUNTY PROPERTY RECORD SEARCH**

📄 GO BACK(F9)

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_Paul E. Malone Sr._ _____ (Seal)
PAUL E. MALONE SR.          -Borrower

_Faith Lanier Malone_ _____ (Seal)
FAITH LANIER MALONE          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ [Space Below This Line For Acknowledgment] _____

Signed, sealed and delivered in the presence of:

_Dianne Higgs_ _____        _Alicia Gassett_ _____
Unofficial Witness  RALILHE  HIGGS   Unofficial Witness  ALICIA GASSETT

                                     _Alicia Gassett_ _____
                                     Notary Public
                                     State of Georgia
                                     Notary Public, Dougherty County, Georgia
                                     My Commission expires My Commission Expires November 19, 2010

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3011 01/01          Page 13 of 13          DocMagic EForms 800-649-1362
                                                www.docmagic.com

GA3011.mzd

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

GO BACK(F5)

Current User: PUBLIC, Logout   HOME

14 of 17

Loan Number: 0610100342

## ACKNOWLEDGMENT AND WAIVER
## OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 14th day of AUGUST, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to NATIONWIDE LENDING CORPORATION, A DELAWARE CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2700 WILTON COURT, ALBANY, GEORGIA 31721

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

Borrower Initials:

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/06                                      Page 1 of 3

DocMagic eFerms 800-649-1362
www.docmagic.com

Gawbr.rae



DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

GO BACK (F8)

Current User: PUBLIC, Logout   HOME

15 of 17

**READ AND AGREED BY GRANTOR:**

Signed, sealed and delivered
In the presence of:

_____
JERALINE HIGGS          Unofficial Witness

_____   (Seal)
PAUL E. MALONE SR.      -Borrower

_____
Maria Garrett          Notary Public

_____   (Seal)
FAITH LANIER MALONE     -Borrower

Notary Public, Dougherty County, Georgia
My Commission Expires November 19, 2010

_____   (Seal)
                        -Borrower

_____   (Seal)
                        -Borrower

_____   (Seal)
                        -Borrower

_____   (Seal)
                        -Borrower

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05                    Page 2 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Grantor.rnc

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

Current User: PUBLIC, Logon]  HOME

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this   26   day of   August, 2007

Alicia Gossett          Notary Public          RAMON V. FAJARDO   Closing Attorney

Notary Public, Dougherty County, Georgia
My Commission Expires November 19, 2010

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05                              Page 3 of 3

DocMagic ℮Forms 800-649-1362
www.docmagic.com

Gawbr.mac



### SCHEDULE "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN THE COUNTY OF
DOUGHERTY, STATE OF GEORGIA, AND BEING MORE PARTICULARLY
DESCRIBED AS FOLLOWS:

ALL OF LOT 65 IN DOUBLEGATE SUBDIVISION, SECTION III, ACCORDING
TO A MAP OR PLAT OF SAID SUBDIVISION RECORDED IN PLAT BOOK 5,
PAGE 71, IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF
DOUGHERTY COUNTY, GEORGIA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY
ASSESSOR AS 005-2/00000/065; SOURCE OF TITLE IS BOOK 678, PAGE
735 (RECORDED 07/13/81)



DOUGHERTY COUNTY PROPERTY RECORD SEARCH

DOC# 001900
FILED IN OFFICE
03/23/2012  12:05 PM
BK-3891  PG:244-244
EVONNE S. MULL
CLERK OF COURT
DOUGHERTY COUNTY

Our File No.: 5111211-FT14
Debtor: Paul E. Malone, Sr. and Faith Lanier Malone

Return to:
Premiis Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

ASSIGNMENT

STATE OF California

COUNTY OF Ventura

MIN: 1000566-0610100342-9

For value received, Mortgage Electronic Registration Systems, Inc. has this day transferred, sold, assigned, conveyed and set over to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, whose address is 177 Countrywide Way, Mail Stop: CAO-911-01-05, Lancaster, CA 93536, as Assignee, its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Paul E. Malone, Sr. and Faith Lanier Malone to Mortgage Electronic Registration Systems, Inc., dated August 14, 2007, recorded in Deed Book 3359, Page 310, Dougherty County, Georgia Records.

Property Address: 2700 Wilton Court, Albany, GA 31721

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby together with all the powers, options, privileges and immunities therein contained.
The Assignor herein has this day sold and assigned to the Assignee herein the note secured by the aforesaid Security Deed and this transfer is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this    MAR 15 2012

Signed, sealed and delivered
in the presence of:

Unofficial Witness  Youda Crain

Unofficial Witness  MARYANN HIERMAN

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:
Printed Name: Cecilia Rodriguez
Title: Assistant Secretary

By:
Printed Name: Aida Duenas
Title: Assistant Secretary
(Corporate Seal)

ACKNOWLEDGMENT
State of California
County of Ventura
On 3/15/12 before me, Darryl Brown, Notary Public,
(insert name and title of the officer)
Personally appeared Cecilia Rodriguez (and) Aida Duenas
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her(their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)

DARRYL BROWN
Commission # 1812305
Notary Public - California
Los Angeles County
My Comm. Expires Oct 3, 2012


PLAINTIFF'S
EXHIBIT

DOC# 011104
FILED IN OFFICE
10/23/2013  11:46 AM
BK:4072  PG:31-33
EVONNE S. MULL
CLERK OF COURT
DOUGHERTY COUNTY

REAL ESTATE TRANSFER TAX
PAID: $0.00

Return To:                                    CROSS INDEX TO DEED
McCalla Raymer, LLC                           BOOK 3389, PAGE 310,
1544 Old Alabama Road                         DOUGHERTY COUNTY,
Roswell, GA 30076                             GEORGIA RECORDS

STATE OF GEORGIA
COUNTY OF FULTON

### DEED UNDER POWER

THIS INDENTURE, effective as of the 3rd day of September, 2013, by Paul E. Malone, Sr. and Faith Lanier Malone (hereinafter collectively referred to as "Borrower"), acting through this duly appointed attorney in fact, Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP formerly known as Countrywide Home Loans Servicing, LP (hereinafter referred to as "Lender"), as Party of the First Part, and Bank of America, N.A. as Party of the Second Part:

### WITNESSETH:

WHEREAS, Borrower executed and delivered that certain Security Deed given by Paul E. Malone, Sr. and Faith Lanier Malone to Mortgage Electronic Registration Systems, Inc., dated August 14, 2007, recorded in Deed Book 3389, Page 310, Dougherty County, Georgia Records, as last transferred to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP by assignment, recorded in Deed Book 3891, Page 244, Dougherty County, Georgia Records, conveying the after-described property to secure a Note in the original principal amount of ONE HUNDRED THIRTY THOUSAND AND 0/100 DOLLARS ($130,000.00);

WHEREAS, default in the payment of the required installments under said Note occurred, and by reason of said default, Lender elected, pursuant to the terms of the Security Deed and Note, and declared the entire principal and interest immediately due and payable; and

WHEREAS, said entire indebtedness still being in default, Lender on behalf of Borrower, and according to the terms of said Security Deed, did advertise said property for sale once a week for 4 Weeks immediately preceding said sale in a newspaper in Dougherty County, Georgia, wherein the Sheriff carried his advertisements, namely the Albany Herald; and

WHEREAS, notice was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as O.C.G.A. Section 44-14-162.2 and Section 44-14-162.4. The notice so required was rendered by mailing a copy of the Notice of Sale submitted to the publisher to the "Debtor" (as that term is defined in O.C.G.A. Section 44-14-162.1) at least thirty days prior to the foreclosure sale date on September 3, 2013; and



PLAINTIFF'S
EXHIBIT
E

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

GO BACK(9)

Current User: PUBLIC, Logout   HOME   [INDEX DATA]

WHEREAS, Lender did expose said property for sale to the highest bidder for cash on the first Tuesday in September, 2013 within the legal hours of sale at the usual place for conducting Sheriff's sales in Dougherty County before the Courthouse door, or at such place as may be lawfully designated as an alternative, and offered said property for sale at public outcry to the highest bidder for cash when and where the aforesaid Party of the Second Part bid ONE HUNDRED FIFTY-SEVEN THOUSAND ONE HUNDRED EIGHTY-EIGHT AND 54/100 DOLLARS ($157,188.54); AND

WHEREAS, the said property was knocked off to the Party of the Second Part for the aforementioned sum of money in cash.

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, the Party of the First Part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the Party of the Second Part, said party's representatives, heirs, successors and assigns, the following described property:

All that tract or parcel of land lying and being in the County of Dougherty, State of Georgia, and being more particularly described as follows:

All of Lot 65 in Doublegate Subdivision, Section III, according to a map or plat of said subdivision recorded in Plat Book 5, Page 71, in the Office of the Clerk of Superior Court of Dougherty County, Georgia.

For informational purposes only: The APN is shown by the County Assessor as 005-2/00000/065; source of title is Book 678, Page 735 (recorded 07/13/81)

TOGETHER WITH all and singular the rights, members and appurtenances thereto appertaining; also all the estate, right, title, interest, claim or demand of the Party of the First Part, or said Party's representatives, heirs, successors and assigns, legal, equitable or otherwise, whatsoever, in and to the same.

THIS CONVEYANCE IS SUBJECT TO any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed.

TO HAVE AND TO HOLD the said property and every part thereof unto the said Party of the Second Part, and said party's representatives, heirs, successors and assigns, to said Party's own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as the said Party of the First Part or said Party's representatives, heirs, successors and assigns, did hold and enjoy the same.

Page 2   McCalla Raymer, LLC 5111211-FT14/lm7

09/03/13

DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]

GO BACK[F9]                                                    Current User: PUBLIC, Logout   HOME

IN WITNESS WHEREOF, Lender as Agent and Attorney in Fact for Borrower has hereunto affixed Lender's hand and seal on this, the _____ day of ____ OCT 0 8 2013

Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP formerly known as Countrywide Home Loans Servicing, LP

as Attorney in Fact for

Paul E. Malone, Sr. and Faith Lanier Malone

Witness the execution hereof by the lender through its duly authorized Attorney-in-Fact, McCalla Raymer, LLC., whose appointment was published in Deed Book 4011, Page 294, Dougherty County, Georgia Records

By: _____ OCT 0 8 2013

Print Name: _____ **Mitzi West, Esq.**

Title: Attorney in Fact

By: _____ OCT 0 8 2013
Print Name: _____ John D. Fichtner

Title: Attorney in Fact

Signed, sealed and delivered in the presence of:

_____ OCT 0 8 2013
Witness

A. Drew Powers
_____
Print Name

_____ OCT 0 8 2013
Notary Public       Nicholas Rolader

My Commission Expires: 4-25-17

(Notary Seal)

Page 3      McCalla Raymer, LLC 5111211-FT14/tm7

09/03/13



DOUGHERTY COUNTY PROPERTY RECORD SEARCH

[INDEX DATA]
Current User: PUBLIC, Logout | HOME

```
DOC# 011105
FILED IN OFFICE
10/23/2013  11:46 AM
BK:4072  PG:34-35
EVONNE S. MULL
CLERK OF COURT
DOUGHERTY COUNTY
    Evonne S. Mull
REAL ESTATE TRANSFER TAX
PAID: $0.00
```

Return To:
McCalla Raymer, LLC;
1544 Old Alabama Road
Roswell, GA 30076

STATE OF GEORGIA
COUNTY OF FULTON

## SPECIAL WARRANTY DEED

THIS INDENTURE, effective as of the 3rd day of September, 2013, between Bank of America, N.A., Grantor, and Federal Home Loan Mortgage Corporation, whose address is 5000 Plano Parkway, MS SW, Carrollton, TX 75010, Grantee.

WITNESSETH THAT:

The said Grantor, for and in consideration of the sum of TEN DOLLARS ($10.00) and other valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed, and confirmed, and by these presents does grant, bargain, sell, alien, convey, and confirm unto the Grantee, his successors and assigns, the following described property:

All that tract or parcel of land lying and being in the County of Dougherty, State of Georgia, and being more particularly described as follows:

All of Lot 65 in Doublegate Subdivision, Section III, according to a map or plat of said subdivision recorded in Plat Book 5, Page 71, in the Office of the Clerk of Superior Court of Dougherty County, Georgia.

For informational purposes only: The APN is shown by the County Assessor as 005-2/00000/065; source of title is Book 678, Page 735 (recorded 07/13/81)

Page 1       McCalla Raymer, LLC 5111211-FT14/lm7

09/03/13



PLAINTIFF'S
EXHIBIT
F

TO HAVE AND TO HOLD, the said property hereinabove described, together with all and singular the rights, members and appurtenances thereunto appertaining to the only proper use, benefit and behoof of the said Grantee, his successors and assigns, in FEE SIMPLE; and the said Grantor specially warrants the title to the said bargained property above described against the lawful claims of all persons claiming by, through and under the Grantor.

IN WITNESS WHEREOF, the Grantor has caused this indenture to be executed in its name and on its behalf under seal by its undersigned officials on this, the _____ day of _____ OCT 0 8 2013

Bank of America, N.A.

Witness the execution hereof by the lender through its duly authorized Attorney-in-Fact, McCalla Raymer, LLC., whose appointment was published in Deed Book 4011, Page 294, Dougherty County, Georgia Records

By: _____ OCT 0 8 2013

Print Name: __Mitzi West, Esq.__

Title: _Attorney in Fact_

By: _____ OCT 0 8 2013

Print Name: __John D. Fichtner__

Title: _Attorney in Fact_

Signed, sealed and delivered in the presence of:

_____ OCT 0 8 2013
Witness
__A. Drew Powers__
Print Name

_____ OCT 0 8 2013
Notary Public   __Nicholas Rolader__
My Commission Expires: _4-25-17_

(Notary Seal)



Page 2       McCalla Raymer, LLC 5111211-FT14/lm7

09/03/13


**Countrywide**°
PO Box # 940910
Mt McCoy Station Post Office
Simi Valley, CA 93065

September 6, 2008

Paul E. Malone
2700 Wilton Ct
Albany, GA 31721-9221

Ref. No.: 08-67161208-01

IuIIuuIIIuuIuIuIuuIIIuIIuuIuIuIuuIIIIuuIIuuuIuII

Dear Paul E. Malone,

We are writing to inform you that we recently became aware that a Countrywide employee (now former) may have sold unauthorized personal information about you to a third party. Based on a joint investigation conducted by Countrywide and law enforcement authorities, it was determined that the customer information involved in this incident included your name, address, Social Security number, mortgage loan number, and various other loan and application information.

We deeply regret this incident and apologize for any inconvenience or concern it may cause you. We take our responsibility to safeguard your information very seriously and will not tolerate any actions that compromise the privacy or security of our customers' information. We have terminated the individual's access to customer information and he is no longer employed by Countrywide. Countrywide will continue to work with law enforcement authorities to pursue further actions as appropriate.

If you are a current Countrywide mortgage holder, we will take necessary precautions to monitor your mortgage account and will notify you if we detect any suspicious or unauthorized activity related to this incident. We will also work with you to resolve unauthorized transactions on your Countrywide mortgage account related to this incident if reported to us in a timely manner.

As an additional measure of protection, Countrywide has arranged for complimentary credit monitoring services provided by a Countrywide vendor at no cost to you over the next two years. We have engaged ConsumerInfo.com, Inc., an Experian® Company, to provide to you at your option, a two-year membership in Triple Advantage Credit Monitoring. **You will not be billed for this service.** Triple Advantage includes daily monitoring of your credit reports from the three national credit reporting companies (Experian, Equifax® and TransUnion®) and email monitoring alerts of key changes to your credit reports.

To learn more about and enroll in Triple Advantage, log on to www.consumerinfo.com/countrywide and complete the secure online form. You will need to enter the activation code provided below on page two of the online form to complete enrollment. If you do not have Internet access, please call the number below for assistance with enrollment. You will have 90 days from the date of this letter to use the code to activate the credit monitoring product.

Borrower Activation Code: CWHCNPJHN

In light of the sensitive nature of the information, we urge you to read the enclosed brochure outlining precautionary measures you may want to take. The brochure will guide you through steps to:

  ✓ Contact the major credit bureaus and place a fraud alert on your credit reports;
  ✓ Review your recent account activity for unauthorized charges or accounts;
  ✓ Be vigilant and carefully review your monthly credit card **and other account statements** over the next twelve to twenty-four months for any unauthorized charges; and
  ✓ Take action should any unauthorized activity appear on your credit report.

We apologize again that this incident has occurred and for any inconvenience or worry it may have caused. If you have questions, please call our special services hotline at **1-866-451-5895**, and a specially trained representative will be ready to assist you.

Sincerely,

*Sheila Zuckerman*

Sheila Zuckerman
Countrywide Office of the President
Enclosure

EXHIBIT
G

LAW OFFICES
## MCCALLA RAYMER, LLC
1544 OLD ALABAMA ROAD
ROSWELL, GEORGIA 30076

TELEPHONE: (770) 643-2148
TELEFAX: (770) 643-4062
1-800-845-8633

January 21, 2011

Paul E. Malone, Sr.
Faith Lanier Malone
2700 Wilton Ct
Albany, GA 31721

| | | |
|---|---|---|
| Our File #: | 5111211 | |
| Loan #: | 162057906 | |
| Property Address: | 2700 Wilton Court | |
| | Albany, GA 31721 | |

Dear Borrower:

**EXCEPT AS MAY BE NOTED HEREIN, THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The above-referenced loan has been referred to this law firm for handling.

As of the date of this letter, the amount of debt is $129,587.51. Because additional interest, late charges and other charges may accrue, the amount to reinstate or pay off your loan changes daily. Please call our office for complete reinstatement or payoff figures.

The debt is owed to BANK OF AMERICA, who is authorized to receive payment on your loan, but who may not be the recorded holder of the Security Deed.

Be advised that unless you dispute the validity of the debt or any portion thereof within thirty days after receipt of this notice, we will assume that the debt is valid. If you notify us in writing at the above address within the thirty-day period that the debt, or any portion thereof is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you. Also, upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

Please be advised that if you have previously received a discharge in a Chapter 7 bankruptcy case, your personal liability on this loan may have been extinguished. In that event, the action we have been requested to take would be limited to the foreclosure of the above-referenced property. If you are currently under bankruptcy protection and no relief has been granted to your lender, please fax your bankruptcy case information to us at (866) 812-4732. We may be able to close our file immediately.

Sincerely,

McCalla Raymer, LLC

By:

EXHIBIT

regardless contact filed in paper
& made public 2/21/2011



**Bank of America**

Executive Customer Relations
Office of the CEO and President

February 23, 2011

Re:   Mr. Paul E. Malone, Sr.
      Property Address:  2700 Wilton Court, Albany, GA 31721
      Loan number ending: 7906

Dear Mr. Malone:

This letter is to acknowledge receipt of your correspondence dated February 17, 2011, which was received on February 18, 2011, by the Office of the CEO and President at Bank of America Home Loans and Insurance, a subsidiary of Bank of America, N.A. ("BAC Home Loans").

We are treating your correspondence as a Qualified Written Request under RESPA Section 6(e).  We will respond to your inquiry within 60 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of your correspondence.

If you have any questions, please contact Darian Street-Hoover at 1.336.333.7179 Monday through Friday, 8 a.m. to 5 p.m. Eastern.

Sincerely,

Darian Street-Hoover
Customer Advocate
Office of the CEO and President



EXHIBIT
I

Bank of America, NC4-105-02-12
100 North Tryon Street, Charlotte, NC 28255-0001

♻ Recycled Paper

**Fax Call Report**

HP LaserJet **M3035 MFP Series**

Page 1

*Eleanor @ BOFA Dawson Rd.*
*handled fax*

**Fax Header Information**

Bank of America
229-446-2576
2011-Feb-28 02:23 PM

| Job | Date/Time | Type | Identification | Duration | Pgs | Result |
|-----|-----------|------|----------------|----------|-----|--------|
| 2227 | 2011-Feb-28 02:17 PM | Send | 917048045233 | 5:40 | 16 | Success |

**Bank of America**

Fax Cover Sheet

To: *DARIAN Street Hoover*
Company: *BOA Cust Advocate*
Telephone Number:
Fax Number: *704-804-5233*
Date: *2-28-11*
From: *PAUL E MALONE*
Department:    Albany Mall Banking Center
Telephone Number:    229-446-2560
Fax Number:    229-446-2576
Number of pages including this cover sheet:
If transmission problems occur, please call:

Message:

This fax, which you requested, may contain promotional materials from Bank of America or one of our affiliate companies. You may choose not to receive future faxes that contain promotional materials by:
• Faxing: (804.627.7042)
• Calling: (800.421.2110)
Important: You must inform the bank of the specific fax number(s) to which the fax opt-out request will apply.
As required by Federal law we will honor your opt-out request within 30 days.
(c) 2006 Bank of America Corporation. All rights reserved.

The information contained in this FAX message is intended only for the confidential use of the designated recipient named above. This message may contain contractual and proprietary information and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the message to us by mail.
00-22-3482NSBW  08-2007


EXHIBIT
J

**BORROWER COPY**

LAW OFFICES
# MCCALLA RAYMER, LLC
1544 OLD ALABAMA ROAD
ROSWELL, GEORGIA 30076

TELEPHONE: (770) 643-2148
TELEFAX: (770) 643-4062
1-800-845-8633

February 28, 2011

Paul E. Malone, Sr.
Faith Lanier Malone
2700 Wilton Ct
Albany, GA 31721

RE:    NOTICE OF FORECLOSURE SALE - Note and Security Deed - BAC Home Loans Servicing,
LP fka Countrywide Home Loans Servicing, LP vs. Paul E. Malone, Sr. and Faith Lanier Malone

| | |
|---|---|
| Servicing Lender's #: | 162057906 |
| Our File #: | 5111211-FT14 |
| Original Borrower: | Paul E. Malone, Sr. and Faith Lanier Malone |
| Current Borrower: | Paul E. Malone, Sr. |
| Property: | 2700 Wilton Court |
| | Albany, Georgia 31721 |
| | Dougherty County, Georgia |
| PMI Certificate No.: | 472830570 |

Dear Borrower:

By letter dated January 21, 2011 (the "Initial Communication Letter") we notified you that the above-referenced loan had been referred to this law firm for handling. That letter also advised you of certain rights (the "Borrowers Rights"- - which include your right to validate the debt) you could exercise within 30 days of your receipt of the Initial Communication Letter. Nothing in this letter will prevent you from exercising the Borrower's Rights as explained in the Initial Communication Letter.

Please be advised that if you are not obligated on this loan, or if you have received a discharge in a bankruptcy case where your personal liability on this loan was extinguished, then any action we take would be limited to the foreclosure of the above referenced property. If you are currently under bankruptcy protection, please fax your bankruptcy case information to us at (866) 812-4732.

The entire amount of the outstanding balance of principal and interest owed on the loan and any other authorized charges is now due and payable. Additionally, the terms of your note call for the addition of attorneys' fees to the debt in case of collection by or through an attorney. Georgia law (O.C.G.A. Section 13-1-11) requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorneys' fees. After that time the full attorneys' fees allowed by Georgia law may be added to the debt.

**THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

EXHIBIT

## Fax Call Report

HP LaserJet M3035 MFP Series

### Fax Header Information

Bank of America
229-446-2576
2011-Mar-08 02:47 PM

| Job | Date/Time | Type | Identification | Duration | Pgs | Result |
|-----|-----------|------|----------------|----------|-----|--------|
| 2286 | 2011-Mar-08 02:45 PM | Send | 917048045233 | 1:19 | 3 | Success |



### Fax Cover Sheet

To: Darian Street Hoover
Company: BoA Cust Advocate
Telephone Number: 704-804-5233
Fax Number:
Date: 03-08-11
From: Paul E. Malone
Department: · Albany Mall Banking Center
Telephone Number: 229-446-2560
Fax Number: 229-446-2576
Number of pages including this cover sheet:
If transmission problems occur, please call:

Message:

This fax, which you requested, may contain promotional materials from Bank of America or one of our affiliate companies. You may choose not to receive future faxes that contain promotional materials by:

• Faxing: (804.627.7042)
• Calling: (800.421.2110)

Important: You must inform the bank of the specific fax number(s) to which the fax opt-out request will apply.

As required by Federal law we will honor your opt-out request within 30 days.

(c) 2006 Bank of America Corporation. All rights reserved.

The information contained in this FAX message is intended only for the confidential use of the designated recipient named above. This message may contain contractual and proprietary information and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the message to us by mail.

00-22-3482NSBW 08-2007


EXHIBIT



Comptroller of the Currency
Administrator of National Banks

September 19, 2011

Faith Lanier Malone
2700 Wilton Court
Albany GA 31721-9221

Re:      Case# 01462944
         BANK OF AMERICA, NATIONAL ASSOCIATION

Dear Ms. Malone:

The Office of the Comptroller of the Currency (OCC) is responding to your recent telephone inquiry regarding the above-mentioned case.

After review of the complaint and the bank's response, we have determined that additional information is needed from the bank.  Therefore, the letter detailing our findings will be delayed.

We apologize for the delay.  If you have any questions, please contact this office at the number listed below.

Sincerely,

*Customer Assistance Group*

Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, Texas 77010-9050
Phone: (800) 613-6743, FAX: (713) 336-4301
Internet Address: www.HelpWithMyBank.gov





**Bank of America**

Executive Customer Relations
Office of the CEO and President

October 6, 2011

Ms. Faith Malone
2700 Wilton Court
Albany, GA  31721

Property address:  2700 Wilton Court, Albany, GA  31721

Dear Ms. Malone:

This letter acknowledges receipt of your correspondence dated August 7, 2011, addressed to The Office of the Comptroller of the Currency.  As a customer advocate, I welcome the opportunity to respond to your inquiry.

Laws that govern customer privacy prevent us from providing you with details about any relationship we may have with any customer without first obtaining written consent from such customer.  Since my attempts to contact you at 1.229.434.7347 on September 22, 2011 and most recently on October 4, 2011, were unsuccessful, our records indicate that no written authorization has been received to date from the person on whose behalf you are inquiring.  We are unable to respond to your inquiry at this time.  We will; however, review the matter raised in your correspondence and, if warranted, respond directly to the customer with our conclusions.

If you wish to request a form of third party authorization, feel free to contact me directly at 1.855.267.4053 extension 54117.  I am available Monday through Friday, 8:15 a.m. to 5:15 p.m. Eastern.

Sincerely,

Linda Rampersad
Customer Advocate
Office of the CEO and President

cc:  Office of the Comptroller of the Currency



EXHIBIT
M-2

Bank of America, TX2-981-05-07
100 North Tryon Street, Charlotte, NC 28255-0001

♻Recycled Paper



Comptroller of the Currency
Administrator of National Banks

November 18, 2011

Faith Lanier Malone
2700 Wilton Court
Albany GA 31721-9221

Re: Case#: 01462944
BANK OF AMERICA, NATIONAL ASSOCIATION

Dear Ms. Malone:

The Office of the Comptroller of the Currency (OCC) is responding to your letter regarding the above-referenced financial institution. The focus of the OCC's review of consumer complaints against national banks and federal savings associations (thrifts) is to determine whether the financial institutions' actions are consistent with banking statutes, regulations or any policies that are applicable to nationally chartered banking institutions and thrifts.

The OCC contacted the bank, which responded directly to you. Based on our review of both your information and the bank's response, it appears the issues have been appropriately addressed. However, if you are not satisfied with the bank's response, you may appeal its determination by sending a letter to this office explaining why you believe the bank's position is incorrect.

The OCC regulates and examines national banks to ensure their safe and sound financial condition and compliance with banking laws and regulations. The OCC's consumer complaint process was established to ensure that bank customer's legal rights are protected. Information gathered from consumers is made available to the national bank examiners for their use in the bank examination process. We trust this is responsive to your issues. If we can assist you in the future, please do not hesitate to contact our office.

Sincerely,

*Customer Assistance Group*

The Customer Assistance Group's consumer complaint process is a service that is provided to customers of national banks and federal savings associations (thrifts). Information provided within this letter is specifically related to an individual consumer complaint and should not be construed as either a legal opinion of the OCC or a supervisory action. If you are not satisfied with the resolution of your complaint, you may wish to consult legal counsel so as to preserve your rights.

**Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, Texas 77010-9050**
**Phone: (800) 613-6743, FAX: (713) 336-4301**
Internet Address: www.helpwithmybank.gov





Bank of America
Bank of America, GA6-003-01-01
2630 Dawson Rd., Albany, GA 31707

Mr & Mrs Malone

Please Contact Mortgage
Dept - 1800-669-0102 regarding
this payment. these Funds
have to be certified check and
mailed to the Mortgage Dept.
We would not be able to process
this payment at the Banking center.

Rita Mendpara

**Bank of America**

PRESORTED
FIRST CLASS



02 1M
000 4256264
MAILED FROM ZIP CODE 32256

$ 00.374
FEB 14 2012

Mr Paul Malone
2700 Wilton Ct
Albany

**Bank of America**

PAUL MALONE
FAITH MALONE
2700 Wilton Ct
Albany, GA 31721

1184
64-137/611



DATE 2/10/2012

PAY TO THE
ORDER OF  Bank of America          $ 1291.36

twelve hundred ninety one $436/100          DOLLARS

**REGIONS**
Mortgage # 162057906

Paul Malone

⑆06⑆101375⑆ 6961037358⑈ 1184

Harland Clarke



EXHIBIT

**Bank of America**

Rita Mendpara
Sale & Service Specialist
Abany Mall

MARCH 5, 2012

BANK OF AMERICA
Attn: JIMILIA MIDDLETON
1-877-471-4367 extension 366177


Dear Jimilia:

As promised via our telephone conversation dated 2/29/2012, my husband
returned home, 03/05/2012 pm, & I typed up ANOTHER written
authorization, for me, Faith L. Malone, who was on the original loan, now
erroneously deleted from the BOfA system records.  Please be advised that
all contact names & IDs, all correspondence with ALL BOfA Departments I
am bounced to, ARE being reported to OCC & CFPG, as well other
government agencies.

HERE IS THE AUTHORIZATION FROM MY HUSBAND:

I, PAUL E. MALONE SR., have repeatedly authorized in writing/by phone
8/2009, 10/2010, & 3/28/2011, all BOfA parties, that my wife, Faith L.
Malone has my permission and authority to speak for me concerning our
Nationwide/Countrywide/BOfA loan #162057906.

I can only hope this FOURTH faxed authorization is not ALSO erroneously
lost, misplaced, and deleted from the BOfA system.



Respectfully, I remain,



PAUL E. MALONE, SR.
2700 WILTON COURT
ALBANY, GEORGIA 31721




2260867993

**BORROWER COPY**

LAW OFFICES
## MCCALLA RAYMER, LLC
1544 OLD ALABAMA ROAD
ROSWELL, GEORGIA 30076

TELEPHONE: (770) 643-2148
TELEFAX: (770) 643-4062
1-800-845-8633

March 28, 2012

Paul E. Malone, Sr.
Faith Lanier Malone
2700 Wilton Court
Albany, GA 31721

RE:   NOTICE OF FORECLOSURE SALE - Note and Security Deed - BAC Home Loans Servicing,
LP formerly known as Countrywide Home Loans Servicing, LP vs. Paul E. Malone, Sr. and Faith Lanier
Malone

| | |
|---|---|
| Servicing Lender's #: | 162057906 |
| Our File #: | 5111211-FT14 |
| Original Borrower: | Paul E. Malone, Sr. and Faith Lanier Malone |
| Current Borrower: | Paul E. Malone, Sr. |
| Property: | 2700 Wilton Court |
| | Albany, Georgia 31721 |
| | Dougherty County, Georgia |
| PMI Certificate No.: | 472830570 |

Dear Borrower:

By letter dated February 17, 2012 (the "Initial Communication Letter") we notified you that the above-referenced loan had been referred to this law firm for handling. That letter also advised you of certain rights (the "Borrowers Rights"-- which include your right to validate the debt) you could exercise within 30 days of your receipt of the Initial Communication Letter. Nothing in this letter will prevent you from exercising the Borrower's Rights as explained in the Initial Communication Letter.

Please be advised that if you are not obligated on this loan, or if you have received a discharge in a bankruptcy case where your personal liability on this loan was extinguished, then any action we take would be limited to the foreclosure of the above referenced property. If you are currently under bankruptcy protection, please fax your bankruptcy case information to us at (866) 812-4732.

The entire amount of the outstanding balance of principal and interest owed on the loan and any other authorized charges is now due and payable. Additionally, the terms of your note call for the addition of attorneys' fees to the debt in case of collection by or through an attorney. Georgia law (O.C.G.A. Section 13-



**THIS IS AN ATTEMPT TO COLLECT A DEBT.     ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.**

EXHIBIT
C

1-11) requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorneys' fees. After that time the full attorneys' fees allowed by Georgia law may be added to the debt.

Enclosed is a copy of the Notice of Sale submitted for publication in the legal newspaper. Note that the sale is scheduled for the first Tuesday in May, 2012, and will be held within the legal hours of sale at the Dougherty County Courthouse.

Please be advised that if the default is not cured and the property is sold at foreclosure to an outside investor (other than your lender), there may be excess proceeds from the sale for distribution to lienholders and/or the owner of record. Neither lienholders nor owners have to sign any contracts or pay any fees to outside agencies to recover these funds! If an outside investor contacts you after foreclosure advising they have purchased your property at sale, please call our Excess Proceeds department between 45 - 60 days after the foreclosure sale to determine if any such funds exist.

For further information regarding this foreclosure, you may call our office at (770) 643-2148, and ask for Team FT14 of Prommis Solutions, LLC.   The lender may be able to allow you to reinstate the loan and stop the foreclosure. You may call our office to find out if reinstatement is allowed; and if allowed, to find out the amount of money which you must pay in order to cure the default. If you reinstate your loan, payment must be made through our office in the form of certified funds or cashier's check.

When telephoning this office please identify yourself as the borrower, and refer to our file number.

The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is:

Bank of America, N.A.
177 Countrywide Way
, Mail Stop: CAO-911-01-05
Lancaster, CA 93536.
(661) 951-5100

Please understand that the secured creditor is not *required* by law to negotiate, amend, or modify the terms of the mortgage instrument.

Please note that this letter is being sent to you in order to comply with Georgia statutory foreclosure law requirements.  Nothing in this letter should be considered as preventing you from exercising the Borrower's Rights as explained in the Initial Communications Letter dated February 17, 2012.

Sincerely,

McCalla Raymer, LLC

/tlj     5/1/12
Enclosure

Original via certified mail - return receipt requested
Copy also sent by first class mail

**THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



**Bank of America**

Executive Customer Relations
Office of the CEO and President

April 18, 2012

Mr. Paul E. Malone
2700 Wilton Court
Albany, GA  31721

Bank of America account ending: 7906

Dear Mr. Malone:

This letter is to acknowledge receipt of your correspondence which was received on April 12, 2012, by the Office of the CEO and President at Bank of America Home Loans and Insurance, a subsidiary of Bank of America, N.A. ("BAC Home Loans").

After reviewing your request, we are treating your correspondence as a Qualified Written Request under RESPA Section 6(e) because you have requested details regarding the servicing of your account.  We will respond to your inquiry within 60 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of your correspondence.

If you have any questions, please contact your Customer Relationship Manager, Ms. Jamila Middleton directly at 1.800.669.6650, Monday through Friday during my office hours from 8 a.m. to 5 p.m. Eastern.

Sincerely,

Tiffany Hensley
Customer Advocate
Office of the CEO and President



EXHIBIT
R

Bank of America, CO3-510-03-01
100 North Tryon Street, Charlotte, NC 28255-0001

♻Recycled Paper

***Privacy Act Release Form for the Office of Senator Saxby Chambliss***

*Please Return Completed Form to:*
*Senator Saxby Chambliss*
*300 Mulberry Street, Suite 502, Macon, Georgia 31201*
*Phone: 478-741-1417 / 800-234-4208*
*Or Fax to: 478-741-1437*

**PLEASE PRINT:**

CIRCLE PREFERRED TITLE:   MR.   MS.   (MRS.)   DR.   OTHER: _____

NAME: FAITH MALONE

ADDRESS: 2700 WILTON COURT          COUNTY: DOUGHERTY

CITY: ALBANY          STATE: GA.          ZIP: 31721

HOME PHONE: 229-434-7347    WORK PHONE: _____

MOBILE PHONE: _____    FAX: _____

E-MAIL ADDRESS: faith-21@bellsouth.net

SOCIAL SECURITY NUMBER: 258729441    DATE OF BIRTH: 2-2-56

**IDENTIFICATION NUMBER:** Please provide any relevant identification number in order for the appropriate Federal Agency to identify your records pertaining to this inquiry. *Not all of the following identification numbers pertain to every constituent. Please provide any number relevant to your personal case.*

VA NUMBER: _____    CSA OR CSF NUMBER: _____

OWCP CLAIM(S) NUMBER(S): _____

ALIEN IDENTIFICATION NUMBER: _____

IMMIGRATION RECEIPT NUMBER: _____

OTHER IDENTIFICATION NUMBER: _____

**FEDERAL AGENCY OR DEPARTMENT:** Please specify the name of the Federal Agency or Department involved in the space provided below.
OCC/CAG COMPLAINT AGAINST BOFA FILED 2/7/2011; COMPLAINT# 01862994
CFPB COMPLAINT FILED 2/2012; COMPLAINT# 120227-000364

Pursuant to the requirements of the Privacy Act, PL 93-579, I hereby grant Senator Chambliss and his staff access to my records so that they may assist me with my case.

SIGNATURE: Faith L. Malone          DATE: 5/22/2012

**NATURE OF PROBLEM:** Below and on the following page or in an attached letter, please provide a complete statement regarding the nature of the problem and the assistance needed from this office. Please attach copies of any additional pertinent documents.

STATEMENT: _____



EXHIBIT
S

| | |
|---|---|
| **Subject:** | Fw: Bank of America Alert: Mortgage − Insurance Payment Made |
| **From:** | PAUL MALONE (faith_21@bellsouth.net) |
| **To:** | lcslaw@bellsouth.net; |
| **Date:** | Thursday, November 28, 2013 8:40 PM |

I called SafeCo (Home Owner's Insurance Co.) and confirmed that they NEVER received this payment from BOFA.
Spoke with SafeCo rep again last week & they have not received response from BOFA at all.  I am to call them back 12/4/13.  They ARE keeping policy valid & in force.
----- Forwarded Message -----
**From:** Bank of America Alert <onlinebanking@ealerts.bankofamerica.com>
**To:** FAITH_21@BELLSOUTH.NET
**Sent:** Tuesday, September 10, 2013 11:12 PM
**Subject:** Bank of America Alert: Mortgage - Insurance Payment Made

To ensure delivery, add onlinebanking@ealerts.bankofamerica.com to your address book.

Exclusively for: | PAUL MALONE             



## Online Banking Alert
**Mortgage: Insurance Payment Made**

**Security Checkpoint:**
> **You last signed in to Online Banking on 06/26/2010.**
> **Remember:** Always look for your SiteKey® before entering your Passcode.

| | |
|---|---|
| **To:** | **PAUL MALONE** |
| **Account:** | **MORTGAGE LOAN ACCOUNT ending in 7906** |
| **Date:** | **09/10/2013** |

An insurance payment was made on 09/09/2013.

Want to confirm this email is from Bank of America? Sign in to Online Banking and go to Alerts. The Alerts History lists the Alerts sent to you in the past 60 days.

Like to get more Alerts? Sign in to your Online Banking account at Bank of America and within the Accounts Overview page select the Alerts tab.

**Security Checkpoint:** This email includes a Security Checkpoint. The information in this section lets you know this is an authentic communication from Bank of America. Remember to look for your SiteKey every time you sign in to Online Banking.

## Email preferences
This is a service email from Bank of America. Please note that you may receive



service email in accordance with your Bank of America service agreements, whether or not you elect to receive promotional email.

**Contact us about this email**
Please do not reply to this email with sensitive information, such as an account number, PIN, password, or Online ID. The security and confidentiality of your personal information is important to us. If you have any questions, please either call the toll-free customer service phone number on your account statement or visit the Bank of America website to access the Contact Us page, so we can properly verify your identity.

**Privacy and security**
Keeping your financial information secure is one of our most important responsibilities. For an explanation of how we manage customer information, please visit the Bank of America website to read our Privacy Policy. You can also learn how Bank of America keeps your personal information secure and how you can help protect yourself.

Bank of America Email, 8th Floor-NC1-002-08-25, 101 South Tryon St., Charlotte, NC 28255-0001

Bank of America, N.A. Member FDIC. Equal Housing Lender ⌂
© 2013 Bank of America Corporation. All rights reserved.

This email was sent to: FAITH_21@BELLSOUTH.NET

AR72768/DD6A66

| | |
|---|---|
| **Subject:** | Fw: Bank of America Alert: Mortgage − Tax Payment Made |
| **From:** | PAUL MALONE (faith_21@bellsouth.net) |
| **To:** | lcslaw@bellsouth.net; |
| **Date:** | Thursday, November 28, 2013 8:35 PM |

Am going to call the DOCO Tax Office and CONFIRM this..

----- Forwarded Message -----
**From:** Bank of America Alert <onlinebanking@ealerts.bankofamerica.com>
**To:** FAITH_21@BELLSOUTH.NET
**Sent:** Wednesday, November 27, 2013 11:17 PM
**Subject:** Bank of America Alert: Mortgage - Tax Payment Made

To ensure delivery, add onlinebanking@ealerts.bankofamerica.com to your address book.

Exclusively for: | PAUL MALONE                   **Bank of America**

 **Online Banking Alert**
**Mortgage: Tax Payment Made**

**Security Checkpoint:**
     **You last signed in to Online Banking on 06/26/2010.**
     **Remember:** Always look for your SiteKey® before entering your
     Passcode.

      **To:**    **PAUL MALONE**
**Account:**    **MORTGAGE LOAN ACCOUNT ending in 7906**
    **Date:**    **11/27/2013**

A tax payment was made on 11/26/2013.

Want to confirm this email is from Bank of America? Sign in to Online Banking
and go to Alerts. The Alerts History lists the Alerts sent to you in the past 60
days.

Like to get more Alerts? Sign in to your Online Banking account at Bank of
America and within the Accounts Overview page select the Alerts tab.

**Security Checkpoint:** This email includes a Security Checkpoint. The information in this section lets
you know this is an authentic communication from Bank of America. Remember to look for your
SiteKey every time you sign in to Online Banking.

**Email preferences**
This is a service email from Bank of America. Please note that you may receive
service email in accordance with your Bank of America service agreements,
whether or not you elect to receive promotional email.



**Contact us about this email**
Please do not reply to this email with sensitive information, such as an account number, PIN, password, or Online ID. The security and confidentiality of your personal information is important to us. If you have any questions, please either call the toll-free customer service phone number on your account statement or visit the Bank of America website to access the Contact Us page, so we can properly verify your identity.

**Privacy and security**
Keeping your financial information secure is one of our most important responsibilities. For an explanation of how we manage customer information, please visit the Bank of America website to read our Privacy Policy. You can also learn how Bank of America keeps your personal information secure and how you can help protect yourself.

Bank of America Email, 8th Floor-NC1-002-08-25, 101 South Tryon St., Charlotte, NC 28255-0001

Bank of America, N.A. Member FDIC. Equal Housing Lender ⌂
© 2013 Bank of America Corporation. All rights reserved.

This email was sent to: FAITH_21@BELLSOUTH.NET

AR72768/DD6A66

**Subject:** Fw: Bank of America Alert: Mortgage - Tax Payment Made

**From:** F M (faithmalone111@yahoo.com)

**To:** lcslaw@bellsouth.net;

**Date:** Friday, May 1, 2015 6:11 PM

On Friday, May 1, 2015 6:07 PM, PAUL MALONE <faith_21@bellsouth.net> wrote:

On Tuesday, November 25, 2014 2:38 PM, PAUL MALONE <faith_21@bellsouth.net> wrote:

On Thursday, November 6, 2014 11:11 PM, Bank of America <onlinebanking@ealerts.bankofamerica.com> wrote:

To ensure delivery, add onlinebanking@ealerts.bankofamerica.com to your address book.

Exclusively for: | PAUL MALONE 



# Online Banking Alert
## Mortgage: Tax Payment Made

### Security Checkpoint:

**You last signed in to Online Banking on 06/26/2010.**
**Remember:** Always look for your SiteKey® before entering your
Passcode.

To: **PAUL MALONE**
Account: **MORTGAGE LOAN ACCOUNT ending in 7906**
Date: **11/06/2014**

A tax payment was made on 11/05/2014.

Want to confirm this email is from Bank of America? Sign in to Online Banking
and go to Alerts. The Alerts History lists the Alerts sent to you in the past 60
days.

Like to get more Alerts? Sign in to your Online Banking account at Bank of
America and within the Accounts Overview page select the Alerts tab.



**Security Checkpoint:** This email includes a Security Checkpoint. The information in this section lets you know this is an authentic communication from Bank of America. Remember to look for your SiteKey every time you sign in to Online Banking.

## Email preferences
This is a service email from Bank of America. Please note that you may receive service email in accordance with your Bank of America service agreements, whether or not you elect to receive promotional email.

## Contact us about this email
Please do not reply to this email with sensitive information, such as an account number, PIN, password, or Online ID. The security and confidentiality of your personal information is important to us. If you have any questions, please either call the toll-free customer service phone number on your account statement or visit the Bank of America website to access the Contact Us page, so we can properly verify your identity.

## Privacy and security
Keeping your financial information secure is one of our most important responsibilities. For an explanation of how we manage customer information, please visit the Bank of America website to read our Privacy Policy. You can also learn how Bank of America keeps your personal information secure and how you can help protect yourself.

Bank of America Email, 8th Floor-NC1-002-08-25, 101 South Tryon St., Charlotte, NC 28255-0001

Bank of America, N.A. Member FDIC. Equal Housing Lender ⌂
© 2014 Bank of America Corporation. All rights reserved.

This email was sent to: FAITH_21@BELLSOUTH.NET

AR72768/DD6A66

**Subject:** Fw: Bank of America Alert: Mortgage - Insurance Payment Made

**From:** F M (faithmalone111@yahoo.com)

**To:** lcslaw@bellsouth.net;

**Date:** Friday, May 1, 2015 6:10 PM

On Friday, May 1, 2015 6:09 PM, PAUL MALONE <faith_21@bellsouth.net> wrote:

To ensure delivery, add onlinebanking@ealerts.bankofamerica.com to your address book.

Exclusively for: | PAUL MALONE          **Bank of America**

 **Online Banking Alert**
**Mortgage: Insurance Payment Made**

**Security Checkpoint:**
**You last signed in to Online Banking on 06/26/2010.**
**Remember:** Always look for your SiteKey® before entering your Passcode.

      To: **PAUL MALONE**
  Account: **MORTGAGE LOAN ACCOUNT ending in 7906**
    Date: **04/23/2015**

An insurance payment was made on 04/22/2015.

Want to confirm this email is from Bank of America? Sign in to Online Banking and go to Alerts. The Alerts History lists the Alerts sent to you in the past 60 days.

Like to get more Alerts? Sign in to your Online Banking account at Bank of America and within the Accounts Overview page select the Alerts tab.

**Security Checkpoint:** This email includes a Security Checkpoint. The information in this section lets you know this is an authentic communication from Bank of America. Remember to look for your SiteKey every time you sign in to Online Banking.



**Email preferences**
This is a service email from Bank of America. Please note that you may receive service email in accordance with your Bank of America service agreements, whether or not you elect to receive promotional email.

**Contact us about this email**
Please do not reply to this email with sensitive information, such as an account number, PIN, password, or Online ID. The security and confidentiality of your personal information is important to us. If you have any questions, please either call the toll-free customer service phone number on your account statement or visit the Bank of America website to access the Contact Us page, so we can properly verify your identity.

**Privacy and security**
Keeping your financial information secure is one of our most important responsibilities. For an explanation of how we manage customer information, please visit the Bank of America website to read our Privacy Policy. You can also learn how Bank of America keeps your personal information secure and how you can help protect yourself.

Bank of America Email, 8th Floor-NC1-002-08-25, 101 South Tryon St., Charlotte, NC 28255-0001

Bank of America, N.A. Member FDIC. Equal Housing Lender ⌂
© 2015 Bank of America Corporation. All rights reserved.

This email was sent to: FAITH_21@BELLSOUTH.NET

AR72768/DD6A66

On Friday, April 24, 2015 1:25 AM, Bank of America <onlinebanking@ealerts.bankofamerica.com> wrote:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

PAUL MALONE, SR. and FAITH
LANIER MALONE,
     Plaintiffs,

v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION,
&
BANK OF AMERICA, N.A.
     Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE
NO. 1:14-CV-193 (WLS)

## CERTIFICATE OF SERVICE

This is to certify that I have, this day, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Federal Home Loan Mortgage Corporation, being the only party defendant of record and that I have served the newly added Defendant, BANK OF AMERICA, N.A., by appropriate service upon its registered agent, CT CORPORATION SYSTEM, whose office address is 1201PEACHTREE STREET NE,  ATLANTA GEORGIA 30361.

I further certify that I prepared this document in 12 point Arial True Type fond and complied with the margin and type requirements of this Court.

This _21 st_ day of _MAY_ ,2015.

/s/ L. Clayton Smith, Jr.,
L. CLAYTON SMITH, JR.