IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| PAUL E. MALONE, SR. & <br> FAITH LANIER MALONE, <br> <br> Plaintiffs, <br> <br> v. <br> <br> FEDERAL HOME LOAN <br> MORTGAGE CORPORATION and <br> BANK OF AMERICA, N.A., <br> <br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : CASE NO.: 1:14-cv-193 (WLS) <br> : <br> : <br> : <br> : <br> : <br> : |

## ORDER

Before the Court are a Motion to Dismiss filed by Defendants Federal Home Loan Mortgage Corporation ("Freddie Mac") and Bank of America, N.A. (Doc. 25) and Plaintiffs Paul E. and Faith Lanier Malone's Motion for a Hearing (Doc. 28). The Malones filed their Second Amended Complaint with leave from the Court on February 26, 2016. (Doc. 23.) Defendants filed their third Motion to Dismiss on March 18, 2016. (Doc. 25.)[1] The Malones filed an untimely response on April 18, 2016 and a Motion for a Hearing on April 19, 2016. (Docs. 26, 27.) Defendants filed no reply. (*See* Docket.) The Court finds that the Motion to Dismiss (Doc. 25) and Motion for a Hearing (Doc. 28) are now ripe for review.

The Malones have provided no explanation for why their response brief was filed thirty-one days after Defendants' Motion to Dismiss nor did the Malones seek an extension of time to file their response. (Doc. 26.) Though the Malones' response brief was untimely, the Court, in its discretion, will consider it. M.D. Ga. L. R. 7.2 (providing a respondent twenty-one days to file a response brief). The Court, however, finds that a hearing on the Motion to Dismiss is not necessary and **DENIES** the Malones' Motion for a Hearing (Doc. 28).

---

[1] The Defendants' two prior Motions to Dismiss were denied as moot in light of the Malones' subsequently filed amended complaints. (Docs. 22, 24.)

1

## FACTUAL BACKGROUND[2]

On July 10, 1981, Faith Malone purchased a home situated at 2700 Wilton Court, Albany, Georgia. (Doc. 23 at ¶ 6.) On August 26, 2007, Faith Malone conveyed by warranty deed a one-half interest in her home to her husband, Paul E. Malone. (*Id.* at ¶ 7.) Prior to August 14, 2007, the Malones negotiated with Nationwide Lending Corporation to refinance their home mortgage. (*Id.* at ¶ 8.) Also on August 26, the Plaintiffs, under the oversight of closing attorney Ramon Fajardo, signed the closing documents for the new mortgage with Nationwide, including a promissory note and security deed, which were preprinted with the date August 14, 2007. (*Id.* at ¶ 9.) The documents set forth Mortgage Electronic Systems, Inc. (MERS) as nominee for Nationwide. (*Id.*) No witnesses or notaries were present at the closing; however, Ramine Higgs, an attesting witness, and Alicia Gassett, a notary, added their signatures sometime between August 26, 2007 and September 10, 2007. (*Id.* at ¶¶ 9-10.) The security deed was recorded in Dougherty County, Georgia on September 10, 2007. (*Id.* at ¶ 10.) On March 15, 2012, MERS assigned the Malones' security deed to BAC Home Loans Servicing (BAC), formerly known as Countrywide Home Loans Servicing (Countrywide). (*Id.* at ¶ 11.) BAC Home Loans Servicing is a wholly owned subsidiary of Defendant Bank of America, N.A. (*Id.* at ¶ 12.)

In February 2008, Plaintiffs received an offer from Countrywide Home Loans Servicing for a credit life insurance policy with Balboa Insurance. (*Id.* at ¶ 15.)[3] Plaintiffs determined they did not want the policy and submitted a notice of cancellation as instructed by the company. (*Id.* at ¶ 16.) In April 2008, Countrywide began adding the premium for the life insurance policy to the Malones' mortgage statement. (*Id.* at ¶ 17.) The Malones, however, continued to make their regular mortgage payment, not including the life insurance premium, via the internet until May 2009. (*Id.* at ¶ 17.) When Faith Malone attempted to make the May 2009 mortgage payment to Countrywide online, she was redirected to BAC's website and informed that the Malones owed payments for January through June 2009 plus

---

[2] For purposes of reviewing a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (citing *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)).

[3] The Court notes that Plaintiffs allege that their mortgage was not conveyed from MERS to Countrywide, which was owned by BAC, until March 2012. (Doc. 23 at ¶ 11; Doc. 23-4.) However, consistent with the Court's obligation to construe all allegations in the complaint as true at this stage, the Court will accept as true the inference from the Malones' allegations that Countrywide was the Malones' mortgage servicer during 2008 and 2009.

late fees and penalties "because the payments she had made to Countrywide after it was acquired by BAC had not been posted to her account." (*Id.* at ¶ 18.) The Malones were not informed until May 2009 that BAC had acquired Countrywide in January 2009 or that they should direct their payments to BAC. (*Id.* at ¶ 19.) The Malones' payments for January through May 2009 were not credited to their account. (*Id.*)

In January 2011, BAC's counsel sent an initial letter demanding payment from the Malones and advising the Malones of their right to dispute the debt. (*Id.* at ¶ 24; Doc. 23-10.) On February 17, 2011, the Malones sent a letter to BAC, receipt of which was acknowledged by a BAC representative on February 23, 2011, which BAC considered a Qualified Written Request under the Real Estate Settlement Procedures Act (RESPA).[4] (Docs. 23 at ¶ 25; 23-11.) On February 28, 2011, BAC sent a Notice of Foreclosure Sale that incorrectly reflected that the original borrowers on the loan had been Paul Malone and Faith Malone and that the current borrower was only Paul Malone. (Docs. 23 at ¶ 27; 23-13)

On February 28, 2011 and March 3, 2011, the Malones faxed various documents to BAC in support of their inquiry into the debt, including a signed release from Paul Malone authorizing Faith Malone to communicate with BAC about the loan. (Docs. 23 at ¶¶ ¶ 23, 26, 28; 23-12; 23-14.) The Malones have also made repeated requests for an accounting and payment record for their account. (Doc. 23 at ¶ 22.)

In May 2011, in order to avoid foreclosure, the Malones paid $8,000 via Western Union Quick Collect, as instructed by BAC, to replace the uncredited January through May 2009 payments. (*Id.* at ¶ 21; Doc. 23-8.) During 2011, the Malones initiated a case with the Customer Assistance Group of the Comptroller of the Currency for Administration of National Banks (Office of the Comptroller). (Doc. 23 at ¶ 29.) The Office of the Comptroller notified the Malones on September 19, 2011 that its response would be delayed because BOA had requested additional information, specifically another signed release from Paul Malone authorizing Faith Malone to communicate with BAC about the loan. (*Id.*; Docs. 23-15; 23-16.) On November 18, 2011, the Office of the Comptroller informed the Plaintiffs it had concluded that BAC's response to the Malones had been adequate. (Docs. 23 at ¶ 30; 23-17.)

---

[4] The Court notes that the Malones have not asserted a claim under RESPA.

3

On February 10, 2012, the Malones attempted to make a mortgage payment by personal check in the amount of $1,291.36. However, the payment was rejected on February 14, 2012, and the Malones were informed that they would have to make their payment in certified funds directly to BAC's Mortgage Department. (Docs. 23 at ¶ 31; 23-18.) On March 5, 2012, the Plaintiffs sent a letter to a BAC Customer Advocate listing the three authorizations Paul Malone had provided to BAC for Faith Malone to communicate with BOA about the loan. (Docs. 23 at ¶ 32; 23-19.)

On March 28, 2012, BOA sent another Notice of Foreclosure Sale to Paul Malone, again showing Paul Malone as the sole current borrower. (Docs. 23 at ¶ 33; 23-20.) On April 18, 2012, a BAC representative acknowledged receipt of this letter and informed the Malones that BAC would consider it a Qualified Written Request under RESPA. (Docs. 23 at ¶ 34; 23-22.)

On September 3, 2013, the Malones' security deed was cried out and foreclosed upon. (Doc. 23 at ¶ 13.) On October 8, 2013, a deed under power was executed, conveying title to Bank of America, N.A. (*Id.*) Additionally, on October 8, 2013, Bank of America, N.A. executed a special warranty deed listing an effective date of September 3, 2013, conveying title to the property to Defendant Federal Home Loan Mortgage Corporation (Freddie Mac). (*Id.* at ¶ 14.)

Since the September 2013 foreclosure sale, BAC has maintained an open account for the Malones and has continued to send online banking alerts to the Malones indicating that BOA has made insurance and tax payments on the property. (*Id.* at ¶ 41; Docs. 23-24 through 23-27.) As recently as February 5, 2016, BAC sent a notice to the Plaintiffs that their loan is in foreclosure with a reinstatement payment amount. (Docs. 23 at ¶ 42; 23-28; 23-29.) An eviction proceeding is pending against the Malones in the Dougherty County Magistrate Court and has been stayed pending resolution of the above-styled case. (Doc. 23 at ¶ 40.)

The Malones allege that they have made every mortgage payment when due except for those that were not accepted by BAC or Countrywide and that their account reflected insufficient payments because their mortgage payments were first applied to the premium for the life insurance they did not want. (*Id.* at ¶¶ 44-45.)

4

**DISCUSSION**

I.      **Motion to Dismiss Standard**

Defendants move to dismiss the Malones' claims against them based on Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Secs. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the [p]laintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff[s'] favor" but is "'not required to draw [p]laintiffs' inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), (abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012)). The Supreme Court instructs that in considering a motion to dismiss "a court must accept as true all of the allegations contained in a complaint"; this principle, however, "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

Finally, the Malones have attached a number of documents to their Amended Complaint. (*See* Docs. 23-1 through 23-29.) The Court may consider a document attached to a motion to dismiss without converting the motion to a motion for summary judgment if the document is (1) central to the plaintiffs' claims and (2) undisputed. *Horsley v. Feldt*, 204 F.3d 1125, 1134 (11th Cir. 2002)). Defendants do not dispute the authenticity of any of these

5

documents. Therefore, the Court will consider the attached documents to the extent they are central to plaintiffs' claims.

## II. Analysis

In their Second Amended Complaint, the Malones assert three substantive claims for relief against the Defendants: (1) a breach of contract claim against Defendant Bank of America, N.A.[5] (Doc. 23 at 8-9); (2) a fraud claim against Defendant Bank of America, N.A. that does not specify from which statutory authority it arises (*Id.* at 9-10); and (3) a wrongful foreclosure claim against Defendants Bank of America, N.A. (*Id.* at 10-11.) The Malones seek equitable relief and ask the Court to enjoin Freddie Mac from evicting them, to set aside the foreclosure and return title to the property to the Malones, and to order that BAC contract with the Malones for a new mortgage in the correct amount owed. (*Id.* at 11-12.) The Malones also seek compensatory damages, punitive damages, and attorney's fees. (*Id.* at 11-13.) Defendants move to dismiss all of the Malones' claims. (*See* Doc. 25.)

### A. The Malones' Breach of Contract Claim

The Malones' first substantive claim is for breach of contract. (Doc. 23 at 8-9.) As an initial matter, the Court notes that the Malones' Second Amended Complaint does not appear to assert a breach of contract claim against Freddie Mac (*see* Doc. 23 at 8-9), but to the extent the Malones intend to do so, such a claim against Freddie Mac is **DISMISSED WITH PREJUDICE** because the Malones do not allege that Freddie Mac was a party to any contract with the Malones. *Kaesemeyer v. Angiogenix, Inc.*, 629 S.E.2d 22, 25 (Ga. Ct. App. 2006) ("It is axiomatic that a person who is not a party to a contract is not bound by its terms."). Defendants' Motion to Dismiss (Doc. 25) is therefore **GRANTED-IN-PART** as to the Malones' breach of contract claim against the Freddie Mac.

As to the Malones' breach of contract claim against Bank of America, Defendants argue the claim is barred by the six-year statute of limitations on simple written contracts under O.C.G.A. § 9-3-24. (Doc. 25 at 4-5.) In response, the Malones argue the applicable statute of limitations is twenty-years under O.C.G.A. § 9-3-23 because the contract they seek to enforce –the security deed executed by the Malones to Nationwide –is a sealed instrument. Though the Defendants were on notice from the briefing on their prior motions to dismiss that the Malones would likely assert the twenty-year statute of limitations again,

---

[5] Defendant Bank of America, N.A. is referred to in the Second Amended Complaint as BAC.

the Defendants have put forth no argument for why the Court should not find that the security deed is a sealed instrument. (Docs. 21 at 8-9 (arguing for the first time that the twenty-year statute of limitations applies); 25 (putting forth no argument for why the security deed should not be considered a sealed instrument); *see* Docket (showing no reply brief was filed by Defendants).)

For simple contracts in writing, O.C.G.A. § 9-3-24 provides, "All actions . . . shall be brought within six years after the same become due and payable. However, this Code section shall not apply to actions for the breach of contracts for the sale of goods under Article 2 of Title 11 or to negotiable instruments under Article 3 of Title 11." And for sealed instruments, O.C.G.A. § 9-3-23 reads, "Actions . . . shall be brought within 20 years after the right of action has accrued. No instrument shall be considered under seal unless so recited in the body of the instrument." In Georgia, the characteristics of a sealed instrument are somewhat anachronistic. A sealed instrument must contain "both a recital in the body of the instrument of an intention to use a seal and the affixing of the seal or scroll after the signature." *Chastain v. L. Moss Music Co.*, 64 S.E.2d 205, 206 (Ga. Ct. App. 1951). The "affixing of the seal" may simply be the word "seal" written next to a signor's signature. *See Perkins v. M&M Office Holdings, LLC*, 695 S.E.2d 82, 84 (Ga. Ct. App. 2010) (finding that an instrument was not sealed because the signors' signatures were not accompanied by the word "seal"). Georgia courts have held that even where a grantee did not sign a deed, where the deed was otherwise a covenant, in writing, under seal, the grantee "accepted the legal consequences resulting from the character and form of the instrument" and was therefore bound by the twenty-year statute of limitations. *City of Lawrenceville v. Yancy*, 294 S.E.2d 691, 693 (Ga. Ct. App. 1982) (quoting *Kytle v. Kytle*, 57 S.E. 748, 750 (Ga. Ct. App. 1907)).

The contract the Malones alleged was breached is the August 2007 security deed they entered into with Nationwide. The August 2007 security deed attached to the Malones' Second Amended Complaint recites, "IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument" and contains the seal of a notary public. (Doc. 23-3 at 15.) The Malones' signatures are each accompanied by the word "seal." (*Id.*) The Court finds that the Malones have alleged breach of a contract that, on its face, qualifies as a sealed instrument under Georgia law. The security deed, which is attached to the Second Amended Complaint and incorporated therein, shows on its face a recital in the body of the intent to

7

use a seal, and the word "seal" follows the signatures. (Doc. 23-3 at 15.) For those reasons, the Court finds that the Malones' breach of contract claim is not barred by the statute of limitations because, taking the facts in the pleadings as true, the twenty-year statute of limitations set forth in O.C.G.A. § 9-3-24 applies.

Defendants assert no further argument as to why the Malones' breach of contract claim should be dismissed, and the Court declines to consider *sua sponte* whether the Malones have otherwise asserted a breach of contract claim against Defendant Bank of America, N.A upon which relief may be granted. Therefore, Defendants' Motion to Dismiss (Doc. 25) is **DENIED-IN-PART** as to the Malones' breach of contract claim against Bank of America, N.A.

### B. The Malones' Fraud Claim

The Malones' second substantive claim is for fraud. (Doc. 23 at 9-10.) The Malones' fraud claim arises from their allegations regarding the credit life insurance policy solicitation they received from Countrywide. Because none of the Malones' allegations as to their fraud claim include explicitly or implicitly Defendant Freddie Mac, the Court finds that, to the extent the Malones attempted to assert a fraud claim against Freddie Mac, they have not stated a claim upon which relief can be granted. Indeed, the Malones were first billed for the policy in April 2008, over five years before Defendant Bank of America conveyed title to Freddie Mac after initiating foreclosure proceedings against the Malones. (Doc. 23 at ¶¶ 14, 17.) Therefore, Defendants' Motion to Dismiss (Doc. 25) is **GRANTED-IN-PART** as to the Malones' fraud claim against Defendant Freddie Mac, to the extent one has been asserted, and such claim is **DISMISSED WITH PREJUDICE**.

The Malones allege that Defendant Bank of America's predecessor, Countrywide, committed fraud on the Malones in soliciting their purchase of a credit life insurance policy with Balboa Insurance and continuing to charge the Malones for the policy after learning of their rejection of it. (Doc. 23 at 9-10.) The Defendants move to dismiss the Malones' fraud claim, arguing it is barred by the four-year statute of limitations for "injuries to personalty" under O.C.G.A. § 9-3-31. The Malones do not contest that a four-year statute of limitations applies to their fraud claim but instead argue that their claim is not barred by the statute of limitations "inasmuch as Defendant's fraud was continuous and ongoing." (Doc. 26 at 11-12.)

O.C.G.A. § 9-3-31 reads, "Actions for injuries to personalty shall be brought within four years after the right of action accrues." Georgia courts have held generally that O.C.G.A. § 9-3-31 applies to common law fraud claims. *E.g.*, *Willis v. City of Atlanta*, 595 S.E.2d 339, 343 (Ga. Ct. App. 2004) ("A four-year statute of limitation governs actions for fraud . . . .") (citing O.C.G.A. § 9-3-31); *see also In re Pervis*, 497 B.R. 612, 625 (Bankr. N.D. Ga. 2013). In Georgia, the statute of limitations for a continuous tort "runs from the happening of any given injury." *Cleveland Lumber Co. v. Proctor & Schwartz, Inc.*, 397 F.Supp. 1088, 1094 (N.D. Ga. 1975) (citing *Ga. Power Co. v. Moore*, 170 S.E. 520 (Ga. Ct. App. 1933)).

The Malones did not file the complaint in the above-styled case until August 2014, and Bank of America, N.A. was not added as a party until 2015. (Docs. 1-1 at 1; 12.) The Malones allege that they were first charged for the credit life insurance policy in April 2008. (Doc. 23 at ¶ 17.) The Malones argue that the alleged fraud continued "for a period of several years." (Doc. 26 at 11.) A document attached to and incorporated by reference in the Malones' Second Amended Complaint indicates that Countrywide, Bank of America's predecessor, ceased charging the Malones for the credit life insurance policy approximately "12+ month[s]" after the first charge appeared in April 2008. (Doc. 23-7.) Even if the Malones were charged for the credit life insurance policy every month for two entire years[6] after the first charge in April 2008, their claim would still be barred by the four-year statute of limitations for fraud claims because they did not file their original complaint until August 2014. While the Malones allege that the charges for the insurance policy had ongoing effects that may have continued into the statute of limitations period –mainly Countrywide's failure to refund the insurance premiums paid or correct the Malones' account and the resultant foreclosure proceedings –the Malones allege that the premium charges themselves were the fraudulent acts. (Doc. 23 at ¶ 56.)

Thus, even if the four-year statute of limitations for fraud did not begin running until the last premium charge, which, construing the Second Amended Complaint and attachments liberally, occurred as late as April 2010, the Malones' original complaint, filed in August 2014, was filed after the four-year statute of limitations had run.[7] The Malones have

---

[6] Doc. 23-7 at 6 suggests that the Malones were charged the credit life insurance premiums for two years.
[7] The Court also notes that the Malones' original complaint, filed in Superior Court in August 2014 does not even contain the word "fraud." (*See* Doc. 1-1.) The Malones did not assert a fraud claim until their Second Amended Complaint was filed on February 26, 2016. (Doc. 23.)

asserted no argument that the statute of limitations should be equitably tolled. Therefore, the Court finds that the Malones' fraud claim against Defendant Bank of America, N.A. is barred by the statute of limitations. The Court **GRANTS-IN-PART** the Defendants' Motion to Dismiss (Doc. 25) and **DISMISSES WITH PREJUDICE** the Malones' fraud claim against Bank of America, N.A.

### C. The Malones' Wrongful Foreclosure Claim

The Malones' third substantive claim is for wrongful foreclosure. (Doc. 23 at 10-11.) The Malones' wrongful foreclosure claim arises from their allegations that Defendant Bank of America failed to act in good faith when foreclosing upon the Malones' home. (*Id.*) The Malones allege that Defendant Freddie Mac was not a good faith third-party purchaser for value pursuant to an arm's length transaction because Freddie Mac is "closely identified" with Defendant Bank of America. (*Id.* at 11.)

### 1. *Wrongful Foreclosure Claim against Defendant Freddie Mac*

Defendants argue that the Malones have failed to state a wrongful foreclosure claim against Defendant Freddie Mac because Freddie Mac was not the foreclosing party and thus could not have violated the foreclosure statutes and did not owe a legal duty to the Malones. (Doc. 25 at 6-7.) The Court agrees that the Malones cannot assert a wrongful foreclosure claim against Freddie Mac because it was not the foreclosing party. *See Abdullahi v. Bank of America, N.A.*, No. 2:12-cv-162-RWS, 2013 WL 1137022 at *5 (N.D. Ga. Mar. 15, 2013); *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 846-47 (Ga. Ct. App 2004) (affirming summary judgment for third-party purchaser and law firm that handled foreclosure proceedings in a wrongful foreclosure action where neither party actually foreclosed on the property and there was no evidence that either party had caused plaintiff injury). The Court finds that the Malones' allegations that Freddie Mac is "closely aligned" with Bank of America and was not a good faith third-party purchaser are insufficient to state a claim for wrongful foreclosure against Freddie Mac. The Malones have not alleged that Freddie Mac conspired or colluded with Bank of America to wrongfully foreclose on the Malones. *See Heritage Creek Dev. Corp.*, 601 S.E.2d at 846 (noting the general principle that one cannot be liable for conspiring to do what one has a legal right to do and finding that plaintiff pointed to no evidence of any scheme or collusion between the bank, third-party purchaser, and law firm to wrongfully foreclose on plaintiff's property). Therefore,

10

Defendants' Motion to Dismiss (Doc. 25) is **GRANTED-IN-PART** as to the Malones' wrongful foreclosure claim for both equitable relief and damages against Defendant Freddie Mac, to the extent one has been asserted, and such claim is **DISMISSED WITH PREJUDICE**.

### 2. *Wrongful Foreclosure Claim against Defendant Bank of America*

Next, Defendants argue that because the Malones have not alleged unfairness in the foreclosure procedure itself, they cannot maintain a claim for wrongful foreclosure against Defendant Bank of America. (Doc. 25 at 7.) In response, the Malones argue that "years of systematic and continuous behavior on the part of [Bank of America] and its predecessor" make it impossible to find that the foreclosure was done in good faith. (Doc. 26 at 13.) The Malones allege that Defendant Bank of America breached its duty to act in good faith when foreclosing by:

(1) "[f]ailing to timely notify [the Malones] of the transfer of the servicing of their loan from Countrywide after it had been acquired by BAC;"

(2) "[f]ailing to account for payments made to Countrywide after it had been acquired by BAC and before [the Malones] were notified to redirect their payments;"

(3) "[f]ailing to account for all payments made by [the Malones] prior to March, 2012;"

(4) "[f]alsely advising Plaintiffs of their right to dispute the debt and then failing or refusing to respond to the dispute by failing to provide the necessary payment record and oft requested accounting vital to a determination of the valid debt";

(5) [p]roceeding to foreclose on a deed to secure debt after having been advised repeatedly of disputes on the debt and failing to address the disputed accounting issues"; and

(6) "[c]ontinuing to send taunting letters offering impossible re-instatement terms for years after the foreclosure sale which give the appearance that the foreclosure did not happen." (Doc. 23 at 10-11.)

To assert a wrongful foreclosure claim, the Malones must "establish a legal duty owed to [them] by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury [they] sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004); *see also McCarter v. Bankers Trust Co.*,

11

543 S.E.2d 755, 758 (Ga. Ct. App. 2000). Allegations of a violation of the foreclosure statute are required to maintain a claim for wrongful foreclosure. *McCarter*, 543 S.E.2d at 758 (citing O.C.G.A. §§ 23-2-114; 44-14-160 *et seq.*) "A claim for wrongful exercise of a power of sale under O.C.G.A. § 23–2–114 can arise when the creditor has no legal right to foreclose." *DeGolyer v. Green Tree Servicing, LLC*, 662 S.E.2d 141, 147 (2008) (quoting *Brown v. Freedman*, 474 S.E.2d 73, 75 (1996)). Alternatively, "[w]hen a lender makes some affirmative misrepresentation that renders the foreclosure sale unfair, a claim for wrongful foreclosure may stand independently of a claim for fraud." *Morral v. CitiMortgage, Inc.*, No. CV 114-086, 2015 WL 800173 at *4 (S.D. Ga. Feb. 25, 2015) (citing *Watts v. Bank of New York Mellon, N.A.*, No. 1:13–CV–2701–TWT, 2014 WL 695222, at *3 (N.D.Ga. Feb. 21, 2014)).

The Malones' wrongful foreclosure claim appears to rest solely on the theory that Bank of America breached the duty of good faith. (*See* Doc. 23 at 10-11.) In the loan modification context, this Court has allowed a wrongful foreclosure claim for breach of the duty of good faith to proceed where there were allegations that a bank made repeated oral and written assurances that a loan modification would be granted, accepted payments pursuant to an oral modification agreement, but proceeded to exercise their power of sale anyway.[8] *E.g.*, *Stimus v. CitiMortgage, Inc.*, No. 5:10-cv-435-MTT, 2011 WL 26110391 at *1-3, 5 (M.D. Ga. July 1, 2011); *see also Joseph v. Fed. Home Loan Mortg. Corp.*, No. 1:12-cv-1022-RWS, 2012 WL 5429639 at *3 (N.D. Ga. Nov. 6, 2012) (holding that a plaintiff stated a claim for wrongful foreclosure where she alleged the bank "told her in writing to stop making payments in order to receive a permanent modification" but proceeded to foreclose anyway). But where a bank failed to respond to a debtor's request for a loan modification where it had no obligation to grant him a modification and the debtor failed to make payments, another District Court held that the debtor could not maintain a wrongful foreclosure claim because he had caused his own damages by failing to pay the amount owed. *Morrall*, 2015 WL 800173 at *4.

Here, the Malones allege that Countrywide instructed them in April 2008 to continue making their correct mortgage payment minus the premium for the credit life insurance and informed them their statements would be corrected shortly. (Doc. 23 at ¶ 17.) The Malones

---

[8] The Court notes that this case is not perfectly analogous to loan modification cases but that the similarities are sufficient to render this Court's and other courts' holdings in loan modification cases persuasive.

allege they paid $8,000 by Western Union Quick Collect to replace five months of payments that were "lost" during Bank of America's purchase of Countrywide. (*Id.* at ¶ 21.) Further, the Malones allege they repeatedly sought a payment record from Countrywide and Bank of America and never received one. (*Id.* at ¶¶ 36, 38.) The Malones allege that "they have paid every mortgage payment when due as long as Defendant [Bank of America] or its predecessor Countrywide would accept the payments." (*Id.* at ¶ 45.) The Malones allege they attempted to make a mortgage payment on February 10, 2012 by check and that the check was returned to them with a note stating they had to make the payment by certified check, mailed to a different department. (*Id.* at ¶ 31; Doc. 23-18.) The Malones do not allege that they then attempted to submit this payment by certified check but do allege that "[f]rom March[] 2012 until the foreclosure sale in September[] 2013, [Bank of America] refused to accept Plaintiffs' monthly payments while they were investigating the 'lost' payments." (Doc. 23 at ¶ 39.)

The Court finds that the Malones have stated a wrongful foreclosure claim for breach of the duty of good faith. The Malones have alleged that they made every payment when owed except for those that Bank of America would not accept. The Malones have also alleged they sought an accounting of the amount owed and payments made repeatedly and never received one. Finally, the Malones have alleged they relied on Countrywide's oral instruction that they continue making their usual mortgage payments and disregard the credit life insurance premium their statements said they owed. In sum, the Malones have alleged Bank of America breached its duty to foreclose in good faith and that this breach caused the Malones' damages and have thus stated a claim for wrongful foreclosure. The Court therefore **DENIES-IN-PART** Defendants' Motion to Dismiss (Doc. 25) as to the Malones' wrongful foreclosure claim against Bank of America.

The Malones seek both equitable relief and damages for their wrongful foreclosure claim against Bank of America. Where a party seeks to recover damages for the value of the property, the party may not also seek to set aside or cancel the foreclosure. *Clark v. West*, 395 S.E.2d 884, 885 (Ga. Ct. App. 1990). However, where a party seeks cancellation of the foreclosure in order to recover the property *in addition to* damages for "other breaches of duty and other losses," an action for both equitable relief and damages for wrongful foreclosure may proceed. *Id.* Here, the Malones' Second Amended Complaint seeks to set

13

aside the foreclosure in order to recover the property and also seeks damages resulting from the breach of duty of good faith. (Doc. 23 at ¶¶ 37, 64, 80.) Taking as true the Malones' allegations, the Court finds that the Malones may seek both forms of relief against Bank of America at this time.

Defendants also assert that the Malones cannot seek equitable relief because they have not alleged that they tendered the full amount due. (Doc. 25 at 8-9.) As the Court has already noted, the Malones allege "they have paid every mortgage payment when due as long as Defendant [Bank of America] or its predecessor Countrywide would accept the payments." (Id. at ¶ 45.) The Malones allege they attempted to make a mortgage payment on February 10, 2012 by check and that the check was returned to them with a note stating that they had to make the payment by certified check, mailed to a different department. (*Id.* at ¶ 31; Doc. 23-18.) The Malones do not allege that they then attempted to submit this payment by certified check but do allege that "[f]rom March[] 2012 until the foreclosure sale in September[] 2013, [Bank of America] refused to accept Plaintiffs' monthly payments while they were investigating the 'lost' payments." (Doc. 23 at ¶ 39.) The Court finds that the Malones' allegations that they have at least *tried* to tender the full amount due but that Bank of America has refused to accept their payments are sufficient to state a claim for equitable relief.

For those reasons, the Court **DENIES-IN-PART** Defendants' Motion to Dismiss (Doc. 25) the Malones' claims for equitable relief against Bank of America. The Malones may pursue both equitable relief and damages for wrongful foreclosure against Defendant Bank of America.

### D. The Malones' Claims for Attorney's Fees and Punitive Damages

Finally, Defendants move to dismiss the Malones' claims for attorney's fees and punitive damages. (Doc. 25 at 9-10.) Because the Court has herein dismissed all of the Malones' substantive claims against Defendant Freddie Mac, the Court also **DISMISSES WITH PREJUDICE** the Malones' claims for attorney's fees and punitive damages against Defendant Freddie Mac. *Perry v. Greene Cnty., Ga.*, No. 3:08-cv-43-CDL, 2009 WL 4893589 at *12 n. 7 (M.D. Ga. Dec. 9, 2009) ("Because all of Plaintiff's state law claims fail as a matter of law, Plaintiff's claim for attorney's fees under state law also fails as a matter of law."); *Combs v. Potter*, No. 7:05-cv-68-HL, 2006 WL 1344855 at *3 (M.D. Ga. May 15, 2006) ("[A]

14

claim for punitive damages is effective only if there is a valid claim for actual damages to which it could attach . . . .") However, because the Malones' breach of contract and wrongful foreclosure claims against Defendant Bank of America remain pending, the Court **DENIES-IN-PART** Defendants' Motion to Dismiss (Doc. 25) as to the Malones' attorney's fees and punitive damages claims against Defendant Bank of America.

## CONCLUSION

The Court **DENIES** the Malones' Motion for a Hearing (Doc. 28). The Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' March 18, 2016 Motion to Dismiss (Doc. 25). The Court **DISMISSES WITH PREJUDICE** all of the Malones' claims against Defendant Freddie Mac and the Malones' fraud claim against Defendant Bank of America. The Malones' breach of contract and wrongful foreclosure claims against Defendant Bank of America remain pending. The Court hereby **ORDERS** that the stay on this case be lifted. The Court will notice the Parties for a discovery and scheduling conference by separate order.

**SO ORDERED**, this 12th day of May, 2016.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**